UNITED STATES of America,
Plaintiff–Appellee,

v.

Richard Clay THOMPSON,
Defendant–Appellant.

No. 86–2948.
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Feb. 2, 1988.

Donald Scott Thomas, Jr., Austin, Tex. (Ct. appt'd.), for defendant-appellant.

LeRoy Morgan Jahn, Asst. U.S. Atty., Helen M. Eversberg, U.S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before GEE, RUBIN, and JONES, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

A person lawfully arrested has no reasonable expectation of privacy with respect to property properly taken from his person for inventory by the police. Later examination of that property by another law-enforcement officer is, therefore, not an unreasonable search within the meaning of the Fourth Amendment.

## I.

Richard Clay Thompson was charged with conspiracy to receive, conceal, transport, and store stolen explosives in violation of 18 U.S.C. §§ 371, 842(h) and 844(a); receiving, concealing, transporting and storing stolen explosives in violation of 18 U.S.C. §§ 842(h) and 844(a); and receipt of explosives by a convicted felon in violation of 18 U.S.C. §§ 842(i) and 844(a). The circumstances are these:

Thompson and a companion, Richard Flores, drove from San Antonio, Texas, to visit Thompson's mother, who had leased a ranch in Frio County, Texas. Thompson and Flores decided to steal dynamite from a powder magazine located on the ranch and used by Kemp Geophysical Company in oil and gas exploration. After examining the locks on the magazine to determine their numbers, they obtained duplicate keys. Thompson and Flores returned to the ranch the next day, along with Steve Michaud who had joined them to assist in the theft. That night the three men drove to the magazine, forcibly opened a gate, used the keys they had obtained to open the magazine, and loaded eighteen boxes of dynamite, one partially full box, and 28 blasting caps into Thompson's station wagon.

The three men returned to San Antonio with the stolen property. The next morning Thompson and Michaud rented a unit from Safeway Mini-Storage. The three then unloaded the dynamite from the station wagon, placing it in the storage unit. Thompson placed a lock on the door and kept the keys. The lock on the storage facility bore the label or brand name "ABUS."

Several days later, Flores sold his interest in the dynamite to Thompson because Flores was disenchanted with Thompson's reluctance to sell the dynamite immediately. Two weeks later Thompson was arrested on a state drug charge and confined in the Bexar County Jail. Incident to his arrest, jail officials inventoried his personal property and held it.

Several days later Flores was arrested for the dynamite theft. He gave a complete account of the operation, including the location of the storage facility. A federal agent came to the Bexar County Jail without a warrant to examine Thompson's property. He found among the property that had been taken from Thompson keys with the same label ("ABUS") as the lock on the storage facility. The agent subsequently obtained a warrant to seize the

keys. After obtaining another warrant, federal agents used the keys to open the lock at the storage facility and seized the dynamite and blasting caps.

At a suppression hearing a special agent of the Bureau of Alcohol, Tobacco and Firearms testified that, after he had arrested co-defendant Flores for possession of explosive materials by a convicted felon, Flores gave a statement about the theft of the dynamite and blasting caps from Thompson's mother's ranch. The statement included a description of the activities of Thompson and Michaud, the location of the storage facility where they had locked the explosives, and the fact that Thompson was in possession of the keys. Michaud was then arrested, and he provided a statement that corroborated Flores' statement.

When the agent took Flores to the Bexar County Jail he knew that Thompson was already in custody there on drug charges. The officer who had arrested Thompson told the agent about two keys that Thompson, on the day he was arrested, wanted to leave at his home. After the federal agent asked and was given permission to examine Thompson's personal effects without a warrant, he found two "ABUS" brand keys among them.

Thompson contends that the district court should have suppressed the use of the keys as evidence because the keys were obtained in violation of the Fourth Amendment. He contends that the federal agent conducted a search that went beyond the scope of the justification for the initial search and inventory incident to his arrest on the state drug charge and asserts that the federal agent's subsequent search was to look for evidence of a crime unrelated to his initial arrest. He argues that it was therefore invalid.

**II.**

The Fourth Amendment, protecting the right of the people to be secure, forbids "unreasonable searches." Whether an inspection by a governmental official is a "search" within the meaning of this amendment turns on whether the person also seeks to invoke the protection of the amendment had a reasonable expectation of freedom from the type of governmental intrusion involved.[1] "The basic purpose of this Amendment," the Supreme Court has written, "is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials."[2] Once property has been seized with proper justification and is in plain view of governmental officials, the owner no longer has a reasonable expectation of privacy with respect to that property,[3] and it may be seized without a warrant.[4]

In this case the police had earlier, at the time of the inventory, lawfully viewed the ABUS keys and it cannot be said that another look at them by the federal agent unduly intruded upon Thompson's expectation of privacy.[5]

This was not the situation presented in *Brett v. United States*,[6] in which we held that the fact that police have custody of a prisoner's property for the purpose of protecting it while he is incarcerated does not alone constitute an exception to the requirement of a search warrant. In *Brett* the officer conducted an exploratory search of the prisoner's effects three days after he had been arrested and found cellophane papers with traces of heroin in the watch pocket of the prisoner's trousers. The second inspection was undertaken to look for something that had not been discovered at the time of the inventory.[7] In Thompson's

1. *Mancusi v. DeForte*, 392 U.S. 364, 368, 88 S.Ct. 2120, 2123–24, 20 L.Ed.2d 1154 (1968).

2. *Camara v. Municipal Court*, 387 U.S. 523, 527, 87 S.Ct. 1727, 1730, 18 L.Ed.2d 930 (1967); *Katz v. United States*, 389 U.S. 347, 361, 88 S.Ct. 507, 516, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring).

3. *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).

4. *Id.* *See also* W. LaFave, Search and Seizure § 2.2, pp. 321–322 (2d ed. 1987).

5. W. LaFave, *supra*, § 5.36, p. 492.

6. 412 F.2d 401, 405 (5th Cir.1969).

7. W. LaFave, *supra*, § 5.31, p. 493.

case, the keys were not concealed and no further exploration was required.

Thompson's situation is akin to that in *United States v. Grill.*[8] In that case, a month after the defendant's arrest a federal agent went to the jail without a warrant to determine if there was a key in the defendant's stored personal effects that would fit a particular lock. The agent found the key and took it with him. We held that it was not taken in violation of the Fourth Amendment. What distinguished the case from *Brett,* according to Judge John Godbold, the author of both opinions, was that the key was not hidden, having been initially exposed to police view under unobjectionable circumstances, so that no reasonable expectation of privacy was breached by an officer's taking a second look at something with respect to which Grill's expectation of privacy had been at least partially dissipated.

In a case decided one year after *Brett, United States v. Edwards,*[9] the Supreme Court stated:

> ... [M]ost cases in the courts of appeals have long since concluded that once the accused is lawfully arrested and is in custody, the effects in his possession at the place of detention that were subject to search at the time and place of his arrest may lawfully be searched and seized without a warrant even though a substantial period of time has elapsed between the arrest and subsequent administrative processing, on the one hand, and the taking of the property for use as evidence, on the other.

Later, in reliance on *Edwards,* we held in *Lockhart v. McCotter*[10] that a warrantless second look at a prisoner's wallet did not violate the Fourth Amendment. In both *Lockhart* and this case, the officials were not searching personal effects based on mere hunches that something of evidentia-

ry value might be found.[11] The police officer who had arrested Thompson had already informed the federal agent about the keys. The agent's particularized search for the keys did not require a warrant.

The district court therefore correctly denied Thompson's motion to suppress the keys as evidence. Thompson had no reasonable expectation of privacy in keys that were in state police custody, and there was no undue intrusion upon whatever remaining expectation of privacy, if any, Thompson had.[12]

## III.

■ Thompson objected to testimony by an explosives expert concerning the destructive power of 900 pounds of dynamite, the amount taken from the ranch and cached in the storage facility. The expert stated that the dynamite was dangerously stored and that the effects of any accidental blast would reach to approximately 1000 feet from the storage unit, which would be completely destroyed. The testimony was adduced although another government expert had already testified that the dynamite was an explosive and the jury had already seen a film of a sample of the dynamite being exploded.

Thompson argues that this testimony had no probative value as to any element of the government's case and that its only purpose was to inflame the jury and prejudice him.

Federal Rule of Evidence 401 defines relevance broadly to include any evidence tending "to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."[13] Rule 403 allows the trial judge

---

8. 484 F.2d 990, 991 (5th Cir.1973).
9. 415 U.S. 800, 807, 94 S.Ct. 1234, 1239, 39 L.Ed.2d 771 (1974).
10. 782 F.2d 1275, 1280 (5th Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 873, 93 L.Ed.2d 827 (1987).
11. *Id.* at n. 8.
12. *Edwards; Lockhart,* 782 F.2d at 1280; *Grill,* 484 F.2d at 991.
13. Fed.R.Evid. 401; *United States v. Frick,* 588 F.2d 531, 537 (5th Cir.1979).

to exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice." This balancing of probative value against prejudicial effect is committed to the sound discretion of the trial judge, a decision that is final in the absence of abuse of discretion.[14]

While the expert's testimony was arguably relevant to proof that dynamite is an "explosive" within the meaning of the statute, it was repetitious of previous testimony and exhibits. Even if the district court exceeded the bounds of discretion by admitting the evidence concerning the destructive nature of the explosive, however, the error was harmless. No reference to the brief testimony was made in the closing argument. The evidence from the two co-conspirators and the circumstantial evidence proving the guilt of Thompson was overwhelming.[15]

Thompson also contends that his trial counsel was inadequate, that he was denied his rights under the Speedy Trial Act,[16] and that there was insufficient evidence for his conviction. Counsel appropriately raised these issues, pursuant to Thompson's request, in a summary fashion, consonant with *Anders v. California.*[17] These claims are patently without arguable merit.

For these reasons, the judgment is AFFIRMED.

---

**14.** *United States v. McDaniel,* 574 F.2d 1224, 1227 (5th Cir.1978).

**15.** *See Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *Harrington v. California,* 395 U.S. 250, 254, 89 S.Ct. 1726, 1728–29, 23 L.Ed.2d 284 (1969); *Delaware v.*

*Van Arsdall,* 475 U.S. 673, 106 S.Ct. 1431, 1438, 89 L.Ed.2d 674 (1986).

**16.** 18 U.S.C. §§ 3161–74 (1972 & Supp. IV 1986).

**17.** 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).