Melvin OLES, Appellant,

v.

The STATE of Texas.

No. 764–98.

Court of Criminal Appeals of Texas.

May 26, 1999.

Kurt Gumberger, Houston, for appellant.

S. Elaine Roch, Asst. Dist. Atty., Houston, Matthew Paul, State's Atty., Austin, for the State.

## OPINION

PRICE, J., delivered the opinion of the Court in which McCORMICK, P.J., MEYERS, MANSFIELD, KELLER, HOLLAND, WOMACK and KEASLER, J.J., joined.

Appellant was charged with the offense of murder. After a hearing, the trial court denied appellant's pre-trial motion to suppress evidence. Appellant initially pled not guilty, but during trial changed his plea to guilty. The trial court accepted the plea and sentenced appellant to twenty years confinement. Appellant argued on appeal that the trial court erred in not granting his suppression motion. In a published opinion, the Court of Appeals affirmed the judgment of the trial court. *Oles v. State,* 965 S.W.2d 641 (Tex.App.— Houston [1 st Dist.] 1998). We granted appellant's petition to determine whether law enforcement, without a search warrant, may test the clothing of a person lawfully arrested and in custody for one offense in order to investigate that person's involvement in another (a second)

offense, when there are no exigent circumstances to justify the warrantless testing, nor is there probable cause to test the clothing for the second offense.

We will affirm.

### Facts

The facts are undisputed in this case. Appellant was initially detained at the police station as a potential witness to a murder. During this detention, the police discovered an open warrant issued for appellant's arrest on a motion to revoke probation. The police arrested appellant on this outstanding warrant; they did not arrest him for the murder. The police inventoried and stored appellant's clothing pursuant to this lawful arrest. There was no evidence on or within this clothing that was immediately apparent to the naked eye. Eight days later, with appellant still incarcerated pursuant to the revocation warrant, an investigator took appellant's clothing to the medical examiner's office to determine if it contained blood traces. A serologist discovered blood on appellant's shoes that matched the blood of the murder victim. The police charged appellant with murder, from which he presently appeals.

### Court of Appeals' Decision

■ In a published opinion, the Court of Appeals affirmed the trial court's holding on the suppression of the evidence.[1] *Oles v. State*, 965 S.W.2d 641 (Tex.App.—Houston [1st Dist.] 1998). The Court of Appeals held that the police had every right to search appellant's clothing, take it from him, and keep it in official custody incident to legal arrest. *See id.* at 644. It determined the issue to be whether a person lawfully arrested for one crime continued

to have a legitimate expectation of privacy in clothing that was rightfully under the control of the police, yet being tested for an unrelated crime. *Id.* In its analysis, the Court applied the test for proving a legitimate expectation of privacy, involving two queries: (1) whether the individual, by his conduct, has exhibited an actual (subjective) expectation of privacy and (2) whether the individual's subjective expectation of privacy is one that society is prepared to recognize (objectively) as reasonable. *See id.* (citing *Smith v. Maryland,* 442 U.S. 735, 741, 99 S.Ct. 2577, 2580, 61 L.Ed.2d 220 (1979), *Villarreal v. State,* 935 S.W.2d 134, 138 (Tex.Crim.App.1996) (plurality opinion)). The Court of Appeals determined that appellant could not affirmatively prove either prong of this test, thus the trial court did not abuse its discretion in denying the motion to suppress. *Oles,* 965 S.W.2d at 645.

After this decision, reconsideration *en banc* was requested. *Oles,* 965 S.W.2d at 645. This request was denied in a 5–4 decision. *Id.* Justice Andell delivered an opinion dissenting from the denial of *en banc* reconsideration, in which Justice O'Connor joined. *Id.* The dissenting opinion argued that one more test was required to determine that *this* search was reasonable. *Id.* (emphasis in original). It averred that the minimum constitutional requirements for a warrantless search are (1) probable cause that evidence will be uncovered and (2) exigent circumstances justifying the search. *Id.* (citing *Chambers v. Maroney,* 399 U.S. 42, 52, 90 S.Ct. 1975, 1981, 26 L.Ed.2d 419 (1970)). This case did not involve exigent circumstances nor probable cause, thus the trial court should have granted the suppression motion. *Id.*

---

1. Appellant's brief before the Court of Appeals explained that there were no exigent circumstances to authorize a warrantless search, thus the search was illegal under the Fourth Amendment of the Federal Constitution, Article I, § 9 of the Texas Constitution, and Code of Criminal Procedure articles 14.01 to 14.06 (Vernon 1977 & Supp.1998) and article 38.23

(Vernon Supp.1998). However, the Court of Appeals focused solely on the Federal Constitutional issue. We will also focus only on the Federal Constitutional issue, as it provides appellant with at least an equal amount of protection as its Texas Constitution counterpart, and the *statutory provisions do not apply without a Fourth Amendment violation.*

**106** 

### Standard of Review

 Generally, a trial court's ruling on a motion to suppress is reviewed by an abuse of discretion standard. *See Maddox v. State*, 682 S.W.2d 563, 564 (Tex.Crim. App.1985). However, the instant case presents us with a question of law based on undisputed facts, thus we apply de novo review. *See Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App.1997).

### Analysis

This is a case of first impression for this Court and the legal questions presented are varied and complex. First, this Court must determine whether an arrestee retains any expectation of privacy in clothing lawfully taken and inventoried by police incident to an arrest.[2] Second, if we conclude that such a privacy interest exists, we must then determine if a subsequent search of that clothing without a warrant, probable cause, or "plain view" knowledge of the clothing's relevance as evidence, violates the remaining privacy interest protected by the Fourth Amendment.[3]

 Initially, we decide that it is of no consequence that appellant was arrested for a different crime than the one for which he was eventually charged.[4] It is beyond dispute that a firearm or controlled substance found in a search incident to lawful arrest would not be suppressed, regardless of the charge on which police initially arrested an accused. There is no reason to have a different result here. The police lawfully arrested appellant pursuant to an open arrest warrant. Any evidence discovered in a search incident to that arrest, if otherwise reasonably seized, should not be suppressed merely because it relates to a different crime than the one for which appellant is eventually charged.

This Court has held that police may initially analyze a detainee's clothing incident to arrest. *See Marquez v. State*. 725 S.W.2d 217, 234 (1987), *cert. denied*, 484 U.S. 872, 108 S.Ct. 201, 98 L.Ed.2d 152 (1987). In that case, Marquez was arrested and immediately transported to the police station. *Id.* An officer ordered him to disrobe after noticing that there were blood stains on his clothing and shoes. *Id.* Forensic analysis verified that the blood stains on his clothing matched the victims' blood and Marquez was charged with murder. *Id.* In affirming Marquez' conviction, this Court held that "[t]he warrantless seizure of a suspect's clothing subsequent to a legal arrest, while in custody or detention, is permissible." *Id.* The sole rationale supporting this ruling was a citation to a United States Supreme Court opinion, *United States v. Edwards*, and three cases from this Court that had also cited *Edwards*. 415 U.S. 800, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974); *and see Russell v. State*, 665 S.W.2d 771 (Tex.Crim.App.

2. The precise reason for review stated in appellant's petition for discretionary review is:

"whether law enforcement, without a search warrant, may test the clothing of a person lawfully arrested and in custody for one offense in order to investigate that person's involvement in another (a second) offense, when there are no exigent circumstances to justify the warrantless testing, nor is there probable cause to test the clothing for the second offense."

3. The Fourth Amendment provides in pertinent part, "[t]he right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause,

supported by oath or affirmation and particularly describing the place to be searched." U.S. Const. Amend. IV.

4. Appellant stresses this distinction to warn that police may use "pre-textual" stops in order to arrest suspects on petty, unrelated charges and then search their clothing subsequent to the arrest. We have previously rejected this "slippery-slope" argument when the police have established probable cause to arrest. *See Garcia v. State*, 827 S.W.2d 937, 943 (Tex.Crim.App.1992), *Crittenden v. State*, 899 S.W.2d 668, 669 (Tex.Crim.App.1995). In this case, it is uncontroverted that the police had a valid warrant to arrest appellant, and any subsequent cases would similarly require valid probable cause to arrest or the evidence would be suppressed.

1983), *cert. denied,* 465 U.S. 1073, 104 S.Ct. 1428, 79 L.Ed.2d 752 (1984); *Stewart v. State,* 611 S.W.2d 434 (Tex.Crim.App. 1981); *Deal v. State,* 508 S.W.2d 355 (Tex. Crim.App.1974).

▉ In *Edwards,* police booked the suspect at night, but waited until the following morning to submit his clothing for laboratory analysis. *See* 415 U.S. at 805, 94 S.Ct. at 1238. The Court held that "in a situation like" the one in *Edwards,* the legal arrest of a person, for at least a reasonable time and to a reasonable extent, takes the arrestee's "own privacy out of the realm of protection from police interest in weapons, means of escape, and evidence." 415 U.S. at 809, 94 S.Ct. at 1239–40.[5] The *Edwards* Court apparently based their holding on the "plain view" doctrine, stating

> "[w]hen it became apparent that the articles of clothing were evidence for the crime for which [appellant] was being held, the police were entitled to take, examine, and preserve them for use as evidence, just as they are normally permitted to seize evidence of a crime when it is lawfully encountered."[6]

*Id.* 415 U.S. at 806, 94 S.Ct at 1238 (citations omitted). However, they certainly left open the possibility of expanding this basis with a companion statement that ended the same paragraph:

"Indeed, it is difficult to perceive what is unreasonable about the police examining and holding as evidence those personal effects of the accused that they already have in their lawful custody as the result of a lawful arrest."

*Id.*

The distinctions between the instant case and the cases of *Edwards* and *Marquez* are important. Most notably, *Edwards* and *Marquez* dealt with blood-splattered clothing easily visible to the arresting officer, whereas the officer in the instant case could not see the blood in "plain view". When appellant's clothing was taken eight days after his arrest to the forensics lab for testing, the search was more extensive than the original search at arrest and inventory. This "second search" distinction has caused conflicting results among federal and state courts, as will be explained below. *Also see* LaFave, WAYNE R., SEARCH & SEIZURE § 5.3(b) (3 rd Ed.1996). Additionally, *Edwards* and *Marquez* involved clear findings of probable cause, while here the police did not appear to have sufficient probable cause to apply for a search warrant of appellant's clothing. Finally, the instant case involves an eight-day delay between the arrest and the analysis of appellant's clothing, where the aforementioned cases involved only a half-day delay. Therefore, although *Edwards* and

---

**5.** Appellant stresses that *Edwards* cautioned against expanding its holding when it stated "[w]e do not conclude that the Warrant Clause of the Fourth Amendment is never applicable to post arrest seizures of the effects of an arrestee." 415 U.S. at 808, 94 S.Ct. at 1239. However, in a footnote appended to that quotation, the Supreme Court explained that such conduct must be tested by the Fourth Amendment's general proscription against unreasonable searches and seizures. *Id.* n. 9 (citing *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966) (reasonable for State to require appellant to give blood test in criminal prosecution for driving while intoxicated); *but cf. Rochin v. California,* 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952) (unreasonable for State to attempt to extract capsules of morphine from appellant's mouth by force, then utilize

"stomach pump" to induce vomiting to expel capsules). Thus, it is not clear that this warning envisioned the issues in this case, but rather warned against violative searches of a person's actual bodily person, that are inherently more violative than a search of appellant's clothing.

**6.** A search incident to arrest is also justified by the officer's right to protect himself from concealed weapons on the accused's person or within their immediate area of control. *See United States v. Robinson,* 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973). As this is clearly *not an appropriate argument in this case* (the clothes had been completely out of appellant's control for eight days before the search) we will focus on more appropriate precedent.

*Marquez* provide the foundation for today's ruling, clearly they are not dispositive of the issues presented in the instant case.

The Texas cases cited by *Marquez* are equally distinguishable on their facts from the unique issues presented by this case, but one of them does provide guidance in answering the first question presented:

> "The arrest of appellant, standing alone, [does] not destroy whatever privacy interests she had in the contents of the purse, [but it does] at least for a reasonable time and to a reasonable extent, subordinate those interests to the legitimate governmental interest in discovering weapons and preventing the destruction or secretion of evidence."

*Stewart v. State,* 611 S.W.2d 434, 438 (1981). Thus, arrestees do retain some level of privacy interest in the personal effects or belongings taken from them incident to their arrest. However, this finding only begs the question: is this diminished expectation of privacy *legitimate,* in that it prohibits the police from searching an arrestee's clothing or effects without a warrant or probable cause? This question is best answered by focusing on what the Fourth Amendment is designed to protect.

We recently held that the Fourth Amendment safeguards an individual's legitimate expectation of privacy from unreasonable governmental intrusions. *Villarreal v. State,* 935 S.W.2d at 138. Although *Villarreal* involved an accused's expectation of privacy in another's home and is distinguishable from this case on that fact, it affirmed the standard by which an appellant must prove a legitimate expectation of privacy: (a) that by his conduct, he exhibited an actual subjective expectation of privacy, i.e. a genuine intention to preserve something as private; and (b) that circumstances existed under which society was prepared to recognize his subjective expectation as objectively reasonable. *Id.* (citing *Smith v. Maryland,* 442 U.S. 735, 740, 99 S.Ct. 2577, 2580, 61 L.Ed.2d 220 (1979)).

 However, an arrestee attempting to prove these two prongs must additionally overcome the already lowered expectation of privacy that exists in arrest and detainment situations. It is clear by our ruling in *Marquez* that this Court determined the expectation of privacy in inventoried items is lessened or partially dissipated, or we could not have held that it was valid for police to search and seize the blood-stained shirt.[7] *Marquez,* 725 S.W.2d at 234. Further, while an appellant is incarcerated, he has no expectation of privacy in the jail cell or the clothing he wears within the cell. *See Soria v. State,* 933 S.W.2d 46, 60 (Tex.Crim.App.1996), *cert. denied,* 520 U.S. 1253, 117 S.Ct. 2414, 138 L.Ed.2d 179 (1997). Thus, from a jail cell where he has no expectation of privacy, and in regards to clothing previously determined to be outside the realm of Fourth Amendment protection, an arrestee must prove that his conduct reflected a genuine intention of an expectation of privacy, and that society would deem such an expectation as objectively reasonable under these circumstances.

Courts consider many factors in determining whether or not an expectation of privacy is legitimate. *See Villarreal,* 935 S.W.2d at 138 (citations omitted). However, many of these factors are inapplicable

---

**7.** It is immaterial what justification is employed for finding a lowered expectation of privacy, whether it is the standard inventory practice of the booking station, the plain view exception, or others. Another potential argument could be that the police could consent to the search, as they have control and authority over the items to be searched. *See United States v. Matlock,* 415 U.S. 164, 171, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974); *Garcia v. State,* 887 S.W.2d 846, 851 (Tex.Crim.App.1994) (third party may properly consent to a search when he has control over and authority to use the premises being searched), *cert. denied,* 514 U.S. 1005, 115 S.Ct. 1317, 131 L.Ed.2d 198 (1995). Regardless of why appellant's expectation of privacy is substantially diminished, the *expectation remains diminished until appellant can exhibit conduct reflecting an expectation of privacy.*

to the case at bar, largely because a jail cell and a storage facility operated by law enforcement are simply not places commonly associated with notions of privacy. For example, it is completely inapplicable in this situation to consider whether the accused had a property or possessory interest in the place invaded, or whether he was legitimately within the place invaded. *See id.* In this case, the place "invaded" is a storage area operated by the officers investigating the accused—who himself has no ability to enter the area even if he so wanted.

Some of the factors are applicable to this situation, however, such as whether the accused had complete dominion or control and the right to exclude others from his belongings, whether he took normal precautions customarily taken by those seeking privacy, or whether his claim of privacy is consistent with historical notions of privacy. *See id.* These factors all weigh against a finding of an expectation of privacy in the present case, but none as strikingly as the one involving historical notions of privacy. No situation imaginable is as alien to the notion of privacy than an arrestee sitting in a jail cell, completely separated from his effects that are lawfully controlled and inventoried by the very police that are investigating him.

 It is doubtful in these situations that any appellant would harbor a subjective belief that inventoried items are still private to him.[8] Notwithstanding that improbability, based on the application of the factors described above, it is nearly certain that society would not recognize this belief as objectively reasonable in these situations. This inevitably leads to the conclusion that it is proper for police to examine and test clothing validly within their control and custody, regardless of the exis-

tence of probable cause or exigent circumstances.

Several federal and state courts agree with this conclusion. *See United States v. Jenkins*, 496 F.2d 57 (2d Cir.1974) (defendant arrested for traffic violation had personal effects taken from him, including currency, that were inventoried for safekeeping; seven days later officer checked currency's serial numbers against "bait money" from a recent robbery; court held that these numbers were seen but not recorded and upheld the search under *Edwards* ); *United States v. Phillips*, 607 F.2d 808 (8 th Cir.1979) (personal effects were taken from defendant upon arrest; these effects were later placed in an envelope; still later the envelope's contents were examined and an incriminating note was found; search upheld under *Edwards* ); *United States v. Johnson*, 820 F.2d 1065 (9 th Cir.1987) (court upheld search when "expectation of privacy significantly reduced" by earlier inventory when serial numbers on money not recorded at first inventory but later verified by police); *State v. Bible*, 175 Ariz. 549, 858 P.2d 1152 (1993) (court upheld police seizure and testing of clothes on different charge from one defendant arrested; "authorities merely tested that which had properly come into their possession"); *State v. William*, 248 Kan. 389, 807 P.2d 1292 (1991) (second look not limited to cases where officers observe item and recognize it as evidence later); *State v. Wheeler*, 128 N.H. 767, 519 A.2d 289 (1986) (boots lawfully seized and later lawfully tested against prints at different crime scene); *Contreras v. State*, 838 S.W.2d 594 (Tex.App.—Corpus Christi 1992, pet. ref'd) (police not required to obtain warrant for fingerprints or shoes seized from appellant at arrest).

Nevertheless, not all courts agree as to the proper breadth of this "second look". The Fifth Circuit has held that an arres-

---

8. The Court of Appeals posited that appellant could have shown such a subjective belief by asking friends or family members to pick up his clothes for him at the detention facility. However, even if this shows a subjective in-

tent that appellant considered these clothes private, it is not at all clear that this intent would be considered objectively reasonable by society.

tee's privacy rights are dissipated in items inventoried by police. *See United States v. Thompson*, 837 F.2d 673 (5 th Cir.1988) (keys taken from defendant at arrest are later identified as evidence linking him to dynamite; court held person lawfully arrested has no reasonable expectation of privacy with respect to property properly taken from his person for inventory by police); *United States v. Grill*, 484 F.2d 990 (5 th Cir.1973) (key taken from defendant at arrest that later linked defendant to crime is not suppressed; no reasonable expectation of privacy breached by an officer's taking a second look at matter to which expectation of privacy at least partially dissipated). In both *Grill* and *Thompson*, the Fifth Circuit held that the second search was no more intrusive than the initial search, thereby distinguishing these cases from its own precedent, *Brett v. United States*, 412 F.2d 401, 405 (5 th Cir.1969). In *Brett*, an officer searched the watch pocket of Brett's jeans three days after his arrest and found a packet containing trace amounts of heroin; this pocket was not searched during his original arrest and inventory. *Id.* The Fifth Circuit determined that (1) this search was more extensive than the one performed at his actual arrest and inventory, (2) plain view was not applicable due to the trace amounts of heroin found, and (3) no exigent circumstances warranted the disposal of the warrant requirement. *Id.* Therefore, the court determined that the second search violated appellant's rights under the Fourth Amendment. *Id.See also D'Antorio v. State*, 837 P.2d 727 (Alaska App., 1992) (second glance not applicable if later examination more intensive than first).

 This Court respectfully disagrees with this analysis. The *D'Antorio* and *Brett* Courts grant a defendant more protection simply because he is already incarcerated; a search that was legal at arrest becomes illegal because the evidence was not in "plain view" nor were exigent circumstances present that nullified the re-

quirement for a warrant. This reasoning does not follow the relevant case law, however. The *Edwards* Court could have easily held that the plain view exception justified the seizure of Edward's clothing, but it did not do so. Rather, it merely alluded to the idea—without ever explicitly utilizing the legal term "plain view" and invoking its well established precedent—and then somewhat undercut this conclusion with a broad statement asserting that it would be difficult to find anything wrong with the police searching something they have under their control. Similarly, the *Edwards* Court did not discuss exigent circumstances as playing any role in its decision; indeed, it is difficult to see how the facts of *Edwards* would allow a finding of exigent circumstances since the police had the clothing under their control and were in no imminent danger of losing the evidence. The inherent flaw with the analysis in *D'Antorio* and *Brett* is that both relieve an arrestee of his burden to prove his *existing* and *legitimate* expectation of privacy. The Fourth Amendment is not a magic wand that creates privacy rights where there were previously determined to be none, nor should it restore dissipated rights without appellants providing some evidence that they harbored legitimate expectations of privacy. Therefore, once it is determined that police lawfully seized the personal effects of an arrestee, his expectation of privacy is diminished in those effects until he *can* and *does* exhibit subjective expectations through his conduct, presumably at the time of release from detainment or incarceration. Furthermore, the exceptions that dissipated the expectation of privacy at arrest (weapons, secretion or destruction of evidence, etc.) are removed at the time of release, thus the circumstances compel a finding that this expectation would be objectively reasonable.

 Reviewing this search under a totality of the circumstances, there is virtually no evidence that appellant harbored a subjective expectation of privacy in his

clothing that was in the custody of the police, nor is there evidence that society would deem such a belief reasonable under these circumstances. Appellant has failed to meet his burden of proof in establishing a legitimate expectation of privacy in this clothing.[9] Therefore, appellant's clothing is not encompassed under the protection of the Fourth Amendment and the search of this clothing was reasonable and valid.

For the foregoing reasons, the judgment of the Court of Appeals is affirmed.

KELLER and JOHNSON J.J., delivered concurring opinions.

KELLER, J., delivered this concurring opinion.

The question here is whether appellant had a reasonable expectation of privacy in his clothing against the type of testing that the police conducted. If he had no reasonable expectation of privacy, then there was no "search" implicating the Fourth Amendment, and so the question of search warrants or exigent circumstances becomes irrelevant. And, because the only evidence of which appellant complains is the blood found on his shoes, police testing of other items of clothing is irrelevant to our inquiry. The only question actually before us, then, is whether testing the shoes for blood constitutes a "search" under the Fourth Amendment.

The outside of a person's shoes while being worn are constantly exposed to the public. When appellant was arrested and incarcerated, the police obtained lawful possession of his shoes. Given that the outside of the shoes are constantly exposed to the public, appellant could not have a reasonable expectation of privacy against a visual inspection of the shoes, on the out-

side, with the naked eye. And because the police could legitimately handle and store the shoes, even the inside of the shoes would be exposed to police officers, so appellant would not have a reasonable expectation of privacy against the inspection of that portion of the shoes either.

The real question is whether law enforcement may perform tests that would enable them to discover information that a naked-eye examination would not give them. I believe the answer to that question is "yes," and I find two Supreme Court cases that appear to give useful guidance on the matter. In *United States v. Jacobsen*, 466 U.S. 109, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984), agents for a private mail carrier (Federal Express), in accordance with a company policy regarding insurance claims, opened a cardboard package wrapped in brown paper. *Id.* at 111, 104 S.Ct. 1652. They discovered plastic zip-lock bags containing white powder. *Id.* The Federal Express agents notified the Drug Enforcement Agency (DEA), and a DEA agent was dispatched to the scene. *Id.* The DEA agent opened the plastic bags and obtained a trace amount of the powder from each of them. *Id.* at 111–112, 104 S.Ct. 1652. He subsequently performed a chemical field test on the powder that revealed it to be cocaine. *Id.* at 112, 104 S.Ct. 1652.

The Supreme Court held that the defendant's privacy interest in the package had largely been frustrated by the actions of private agents, to whom the Fourth Amendment did not apply. *Id.* at 120–121, 104 S.Ct. 1652. The actions of government agents infringed no legitimate expectation of privacy because government agents did not, by handling the package and visually inspecting its contents, learn anything that

9. We are unpersuaded by the Court of Appeals' dissenting opinion that requires a subsequent test to establish that *this* search was reasonable. Once appellant fails to prove that his privacy interest is legitimate, he is not afforded the protection of the Fourth Amendment *until* the time at which his legitimate privacy interest is restored. The police were

reasonable in their analysis of clothing properly within their custody, and "[i]ndeed, it is difficult to perceive what is unreasonable about the police examining and holding as evidence those personal effects of the accused that they already have in their lawful custody as the result of a lawful arrest." *Edwards*, 415 U.S. at 806, 94 S.Ct. at 1238.

had not already been learned during the private search. *Id.* The Court further held that the chemical test infringed no expectation of privacy that society was willing to recognize as reasonable because the test was designed only to determine whether the white powder was illegal contraband, which no person has a legitimate interest in possessing. *Id.* at 122–124, 104 S.Ct. 1652.

The other case of interest involves an aerial inspection of Dow Chemical Plant. *Dow Chemical Co. v. United States,* 476 U.S. 227, 106 S.Ct. 1819, 90 L.Ed.2d 226 (1986). In *Dow Chemical,* the Environmental Protection Agency (EPA) "employed a commercial aerial photographer, using a standard floor-mounted, precision aerial mapping camera, to take photographs of the facility from altitudes of 12,000, 3,000, and 1,200 feet." *Id.* at 229, 106 S.Ct. 1819. Simple magnification of the photographs would permit identification of power lines as small as a half-inch in diameter. *Id.* at 238, 106 S.Ct. 1819.[1] The Supreme Court held that the aerial inspection was not a "search" under the Fourth Amendment. *Id.* at 239, 106 S.Ct. 1819. The Supreme Court stated, however, that a very different case would be presented if the government had used "[a]n electronic device to penetrate walls or windows so as to hear and record confidential discussions . . . ." *Id.* (ellipsis and brackets inserted).

As in *Jacobsen,* the present case involves expectations of privacy that have been largely frustrated by legitimate means. Whatever privacy expectation appellant had in his clothing in general, and his shoes in particular, that expectation was largely frustrated after his legitimate arrest and the lawful confiscation of his clothing. And, as in both *Jacobsen* and *Dow Chemical,* authorities in the present case used a form of technology capable of

obtaining information not available to the naked eye. Serology and DNA testing are designed to determine the presence of blood and whether that blood matches a particular person. It seems unlikely that a person can have any privacy expectation concerning the presence of blood on his clothing and it seems even less likely that society would recognize as reasonable a privacy expectation concerning whether the blood matches a known crime victim.

With these comments, I join the majority opinion.

JOHNSON, J., filed concurring opinion.

JOHNSON, Judge, concurring.

I concur in the judgment of the Court. I write separately to express reservations about the breadth of the holding.

The majority first considers "whether an arrestee retains any expectation of privacy in clothing lawfully taken and inventoried by police incident to arrest." *Ante,* at 106. The majority concludes that arrestees do retain some level of privacy in such situations, and then holds that there is no reason to have a different result here than in cases in which a search incident to arrest leads to discovery of a firearm or controlled substance, which would not be suppressed. *Id.* at 106. However, there are significant differences between those cases and the instant case, including the obvious distinctions of being a search rather than a seizure, not being incident to arrest, not being an inventory search, and not being a gun, drug, or other easily-seen evidence, which may lead to different results.

A critical question is whether the search of appellant's clothing[1] eight days after his arrest was incident to his arrest. The majority initially compares this case to

---

1. The Supreme Court noted however, that the power lines were observable in part because of distinctive markings and that other objects of that size could not be seen under magnification. *Id.* at 238 n. 5, 106 S.Ct. 1819.

1. References to appellant's clothing include his shoes.

*Marquez v. State*, 725 S.W.2d 217 (1987), in which this Court held that "[t]he warrantless seizure of a suspect's clothing subsequent to legal arrest, while in custody or detention is permissible." *Id.* at 234. While *Marquez* demonstrates that the *seizure* of a suspect's clothing upon arrest was legitimate, the question in the instant case is whether the *search* of appellant's clothing eight days later was permissible.

The majority also cites *Edwards,* in which the Supreme Court upheld a warrantless seizure of defendant's clothing approximately ten hours after arrest, when substitute clothing became available. *See id.* at 107; *United States v. Edwards,* 415 U.S. 800, 801, 94 S.Ct. 1234, 1236, 39 L.Ed.2d 771 (1974). As in *Marquez,* the *Edwards* Court based their holding on the "plain view" doctrine. *Ante,* at 107. However, there was no such "plain view" evidence of blood on appellant's clothing or shoes in the instant case.

Based on *Marquez* and *Edwards,* it is apparent that the *seizure* of appellant's clothing upon arrest was legitimate. However, the *search* of appellant's clothing was not performed until eight days after his arrest, although such delay does not automatically render the results of the search inadmissible. "[A]n incidental search can be delayed and conducted after the suspect has been jailed, at least if there is some reasonable basis for doing so." McCormick on Evidence § 172 at 489 (3d ed.1972) (citing *Edwards* ). The question thus becomes whether there was a reasonable explanation of the delay of eight days sufficient to justify finding that the search of appellant's clothing was performed "incident' to arrest." The state offered no such explanation, nor did the state attempt to justify the search by probable cause to believe that the clothes were evidence, or that exigent circumstances existed.

As noted by the majority, the standard by which an appellant must prove a legitimate expectation of privacy includes (a) that by his conduct, he exhibited an actual subjective expectation of privacy; and (b)

that circumstances existed under which society was prepared to recognize his subjective expectation as objectively reasonable. *Ante,* at 108.

I agree with the majority's conclusion that society may not recognize as objectively reasonable any expectation of privacy which appellant may have. I am concerned that the majority requires appellant to show an expectation of privacy in a manner that the state prevents. In the circumstances of the instant case, being in state custody prevented appellant from exhibiting an actual subjective expectation of privacy in his clothing. The court of appeals suggests that appellant could have shown such a subjective belief by asking friends or family members to retrieve his clothing at the detention facility. However, by doing so appellant would create exigent circumstances, thus justifying the search he seeks to prevent. Additionally, such practice may allow for different treatment of similarly situated inmates, depending upon whether they have friends or family members willing and able to retrieve their clothing.

A better practice would be to encourage law enforcement officials to secure a valid search warrant before searching appellant's clothing, either physically or by scientific testing, subsequently to a search "incident to arrest." There appears to be no reason why a search warrant could not have been obtained. Appellant was in custody, thus there was no exigency preventing the state from obtaining a search warrant. The testing of appellant's clothing was not performed until January 19, 1995, eight days after his arrest on January 11, 1995. Surely this was sufficient time to secure a warrant, especially since both a search warrant and court order were properly obtained on two other occasions in the instant case.

During the suppression hearing, Officer Tabor, a detective with the Harris County Sheriff's Department, testified that he had obtained a search warrant for appellant's

blood. He further testified that the warrant was signed by a magistrate on January 12, 1995, one day after appellant's arrest. However, based upon the underlying exhibit, it appears that the magistrate actually signed this warrant on January 27, 1995, after the testing of appellant's clothing. This conclusion is supported by the inclusion of the results of those tests in the allegations in the application for the search warrant. The Harris County District Attorney's Office used a separate court order to obtain a sample of appellant's hair. Like the search warrant application, the motion supported the request for the order with allegations that "blood on [appellant's] shoe ... was determined to be consistent with that of the complainant through DNA analysis." Given that the state twice sought judicial authorization of other searches, it could not have been unreasonably onerous to seek judicial authorization of the delayed search of appellant's clothing. Securing a search warrant for the testing of appellant's clothing seems to be little enough to ask to ensure the integrity of the investigation and to forestall a challenge such as this.

Finally, finding that it is "doubtful in these situations that any appellant would harbor a subjective belief that inventoried items are still private to him" and that it is "nearly certain that society would not recognize this belief as objectively reasonable," the majority concludes that "[t]his inevitably leads to the conclusion that it is proper for police to examine and test clothing validly within their control and custody, regardless of the existence of probable cause or exigent circumstances." *Ante,* at 109. While examination of *this* appellant's clothing may have been justified, I think it is necessary to look at the circumstances of individual cases rather than rely on such a broad generalization. As the Supreme Court stated in Edwards, "the Fourth Amendment should not be extended to invalidate the search and seizure in the *circumstances of this case." Edwards,* 415 U.S. 800 at 802, 94 S.Ct. 1234 at 1236, 39 L.Ed.2d 771. (Emphasis added.)

With these comments, I concur in the judgment of the Court.