SALDANA V. STATE

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-02-484-CR

JUAN SALDANA, JR. APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 43
RD
 DISTRICT COURT OF PARKER COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

Juan Saldana, Jr. appeals from his felony conviction for the offense of possession of marihuana fifty to two-thousand pounds.  In his sole point, he contends that the trial court erred by failing to grant his motion to suppress.  We affirm.

Standard of Review

We review the denial of a motion to suppress for abuse of discretion, giving almost total deference to a trial court's determination of historical facts and reviewing de novo the court's application of the law.  
Carmouche v. State
, 10 S.W.3d 323, 327-28 (Tex. Crim. App. 2000); 
Oles v. State
, 993 S.W.2d 103, 106 (Tex. Crim. App. 1999).  At a suppression hearing, the trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony.  
State v. Ross
, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000); 
Romero v. State
, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990).  Thus, the trial court may disbelieve any portion of a witness's testimony, even if the testimony is uncontroverted.  
Ross
, 32 S.W.3d at 855; 
Allridge v. State
, 850 S.W.2d 471, 492 (Tex. Crim. App. 1991), 
cert. denied
, 510 U.S. 831 (1993). 

Facts and Discussion

Following appellant’s guilty plea,
(footnote: 2) the jury convicted appellant for the felony offense of possession of more than fifty, but less than two-thousand pounds of marihuana and assessed his punishment at eighteen years’ confinement.  Before trial, appellant filed a motion to suppress evidence obtained during the search of his truck.  During the suppression hearing, the State called Parker County Sheriff's Department Officer Mark Fletcher who was assigned to the Cross Timbers Narcotics Task Force to testify.  He testified that during the early morning hours of January 26, 2002, he saw a Ford pickup driving very slowly, cross over the shoulder line and dividing lines of the highway.  Officer Fletcher turned on his camera and recorded the weaving of the truck.  He pulled the truck over and spoke to the driver who identified himself as appellant. 

Officer Fletcher testified that appellant gave him all the required papers and explained that he weaved because the steering was loose.  Officer Fletcher became suspicious of appellant when he noticed appellant had only two keys on his keyring, had no luggage for his trip from El Paso to Weatherford, was sweating although it was very cold outside, and that he smiled continuously through the stop. 

Regardless of these “criminal indicators,” Officer Fletcher testified that he decided not to give appellant a ticket and after he finished recording information on the stop at his patrol car, he walked back to appellant’s truck to return appellant’s license.  He walked up to appellant’s truck and told appellant that he was not going to give him a ticket and that appellant was free to go.  While Officer Fletcher was doing this, he noticed that appellant had turned his truck off.  Officer Fletcher then became more suspicious of appellant because drug smugglers who hide drugs in their gas tanks often turn their cars off to conserve fuel. 

After telling appellant he was free to go, Officer Fletcher asked appellant if he would mind staying to talk to him a little longer.  Appellant agreed.  Officer Fletcher told appellant that it was his job to search for contraband.  He asked appellant whether he had any contraband in his truck and appellant stopped smiling and said, “no.”  Officer Fletcher asked appellant if he could search the truck and appellant said, “yes.”  At no time did appellant revoke his consent to the search.  

Officer Fletcher testified that during the search, he noticed that appellant’s gas tank was covered in mud.
(footnote: 3)  Officer Fletcher told appellant that he wanted to use a fiber-optic scope to look in the gas tank.  Appellant did not voice an objection.  With the scope, Officer Fletcher found multiple bulging steel boxes in the gas tank that he suspected contained drugs.  He placed appellant into custody.  A subsequent inventory search uncovered five steel boxes in the gas tanks containing over 150 pounds of marihuana. 

Appellant also testified at the suppression hearing.  Appellant admitted that he gave Officer Fletcher consent to search his truck, but intended that the scope of the consent extend only to the cab and the outside of the truck.  Appellant claimed that he did not give him consent to search the gas tank with the fiber-optic scope.  However, appellant did not voice any objections when Officer Fletcher asked him about using the scope to look in the gas tank.  

The trial court admitted the videotape of the stop, which showed the search of appellant’s truck.  On the tape, Officer Fletcher explains his actions and observations during the stop and subsequent search.  When Officer Fletcher asked appellant, “There’s no illegal drugs or anything like that in the truck tonight is there?”  Appellant said, “no.”  Officer Fletcher asked, “Could I search it to make sure?”  Appellant responded clearly and said, “Yeah.”  Later, Officer Fletcher asked appellant if it was alright if he used a special tool to look into the truck’s gas tank.  Although appellant’s response is not audible, it is clear from the officer’s reaction to appellant that appellant made no objection to the officer’s search of the gas tank. 

Conclusion

As sole trier of fact and judge of the credibility of the witnesses at the suppression hearing, the trial court was within its discretion to give more weight to the testimony of Officer Fletcher than to appellant’s version of the facts.  Additionally, the videotape corroborated Officer Fletcher’s testimony and clearly showed that appellant consented to the search of his truck.  We hold that the trial court did not abuse its discretion by denying appellant’s motion to suppress evidence from the traffic stop.  Appellant’s sole point is overruled and the trial court’s judgment is affirmed.

PER CURIAM

PANEL F: LIVINGSTON, GARDNER, and WALKER, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED:  May 6, 2004

FOOTNOTES
1:
See 
Tex. R. App. P.
 47.4.

2:
Under the 
Helms 
rule, a knowing and voluntary plea of guilty entered without the benefit of a plea bargain waives all nonjurisdictional defects occurring before the plea only if the judgment is independent of and not supported by the alleged error on appeal.  
See Young v. State
, 8 S.W.3d 656, 666-67 (Tex. Crim. App. 2000); 
Helms v. State
, 484 S.W.2d 925, 927 (Tex. Crim. App. 1972).  By entering his non-negotiated plea, appellant has not waived his right to challenge the voluntariness of the plea or the amount of punishment assessed after he entered his plea.

3:
A method that drug smugglers use to conceal tampering with the gas tank.