IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-05-00089-CV

 

Kenneth W. Flournoy and June Flournoy,

                                                                      Appellant

 v.

 

Patricia Wilz, Guardian of Jon Patrick 

Flournoy an Incapacitated Person,

                                                                      Appellee

 

 



From the 77th District Court

Limestone County, Texas

Trial Court No. 26,300-A

 



CONCURRING AND DISSENTING Opinion










 

          I concur in the Court’s conclusion
that Patricia Wilz met her burden of proof to establish a constructive trust on
behalf of her disabled son against his father and stepmother.  I dissent from
that portion of the opinion wherein the majority re-determines the extent of
the constructive trust imposed upon real property purchased with the proceeds
from the ward’s estate.

The problem in this appeal is that the majority
is rendering its own judgment rather than reviewing the trial court’s.  They
have properly determined that Wilz, as successor guardian, proved the facts
necessary for the imposition of a constructive trust on real property.  In this
regard, the jury determined that Wilz had proven the ward’s funds had been used
to purchase certain real property.  The majority properly notes that, because
Wilz met her burden for the imposition of the constructive trust, the burden
shifted to Flournoy to show the maximum extent to which the constructive trust could
be imposed on the real property.  Because Flournoy failed to obtain a jury
finding on this issue, to prevail on appeal, he must conclusively establish its
limitation.

To calculate the extent of the constructive
trust, the majority focuses on the purchase price of the property and the
principal balance of the mortgage.  Under the facts presented, I believe this
is improper.  Flournoy had the burden to show what portion of the property
should not be burdened with the constructive trust.  All the majority is able
to do from this record is guesstimate the approximate amount of the reduction
in the loan balance over the years after the purchase.  This is not adequate to
meet Flournoy’s burden of proof.

Wilz proved that the ward’s assets were used to
make mortgage payments.  The mortgage payments were for more than principal
reduction and Flournoy made no effort to apportion the value of the property
based upon the source of funds used to purchase the property.  Merely looking
to the reduction in the loan balance does not take into consideration that the
loan payments also involved taking money from the ward’s estate to pay interest
and taxes related to the property.

Without some proof to support an apportionment
of the benefits created by the payments made by Flournoy versus those made by
the ward’s estate, there is no basis upon which we can properly disturb the
trial court’s judgment.  The ward is being deprived of the protection of a
constructive trust on property upon which the ward’s money was used to pay
interest and taxes.  Under this approach, if Flournoy had used the ward’s money
to pay only interest and taxes, the ward’s estate would not be entitled to the
equitable remedy of a constructive trust.

Further, I note that the only source of any
evidence that any part of the purchase price was paid by Flournoy came from his
deposition testimony.  On this record, it is not hard to conclude that the jury
could have chosen to disbelieve this testimony.  Because the jury could have
easily disregarded this testimony, there is no basis upon which to limit the
extent of the property upon which the constructive trust was imposed.  The only
jury finding on this claim was that funds belonging to the ward had been used
for acquisition of the farm.  Flournoy failed to secure a jury finding to
establish what part, if any, of his funds could be traced to the purchase of
the farm.  It is improper for the majority to make that factual determination
on appeal based on evidence the jury could have disbelieved.  I would hold that
the trial court properly imposed a constructive trust on the entire farm.

Thus, I concur in the judgment that a
constructive trust is properly imposed on the farm, but dissent to the judgment
to the extent it limits that constructive trust to a 35% undivided interest.

 

                                                          TOM
GRAY

                                                          Chief
Justice

 

Concurring
and dissenting opinion delivered and filed on July 19, 2006






   An accused has standing, under both the state and federal constitutions, to challenge the
admission of evidence obtained by a governmental intrusion only if he had a legitimate expectation
of privacy in the place invaded. See Rakas v. Illinois, 439 U.S. 128, 143, 99 S.Ct. 421, 430, 58
L.Ed.2d 387 (1978); Villarreal, 935 S.W.2d at 138. To establish a legitimate expectation of
privacy, the defendant must show that: 1) he exhibited an actual, subjective expectation of privacy;
and 2) society is prepared to recognize his subjective expectation of privacy as objectively
reasonable. See Villarreal, 935 S.W.2d 134 at 138 (citing Smith v. Maryland, 442 U.S. 735, 740,
99 S.Ct. 2577, 2580, 61 L.Ed.2d 220 (1979)). Furthermore, because the defendant has greater
access to the relevant evidence, the Court of Criminal Appeals has consistently held that the
defendant bears the burden of proving that he had a legitimate expectation of privacy in the
premises searched. Id.; see also Oles v. State, 993 S.W.2d 103, 108 (Tex. Crim. App. 1999);
State v. Mercado, 972 S.W.2d 75, 78 (Tex. Crim. App. 1998); State v. Klima, 934 S.W.2d 109,
110 (Tex. Crim. App. 1996). In bringing the motion to suppress, Green bore the burden of
establishing all of the elements of his Fourth Amendment claim, part of which includes
establishing a privacy interest. See Villarreal, 935 S.W.2d at 138; Klima, 934 S.W.2d at 111.
      The record shows that when questioned by the officers, Green stated that he lived at the
apartment. Officer Jock testified that he found bills in the apartment that were addressed to both
Green and his girlfriend Leslie Bender. He also testified that the leasing agent told him that Green
lived in the apartment. However, Green stated at the suppression hearing that “my name is not
on the lease” and “that wasn’t my residence.” We find that, although the evidence is conflicting,
there is sufficient evidence that Green did reside at the apartment. Consequently, he has standing
to complain of the allegedly illegal search.
 Consent
      The officers asked Green if he lived in the apartment, to which Green answered affirmatively. 
After performing a protective sweep of the apartment, the officers asked Green for permission to
search the apartment, to which he answered, “I don’t care.” Acting with consent, the officers’
search of the drawers in a bedside table discovered the cocaine.
      Consent to search is a well established exception to the warrant requirement. See Schneckloth
v. Bustamonte, 412 U.S. 218, 219, 93 S.Ct. 2041, 2043-44, 36 L.Ed.2d 854 (1973); White v.
State, 21 S.W.3d 642, 645-46 (Tex. App.—Waco 2000, pet. ref’d.). To be effective, the consent
must be voluntary and not the product of duress or coercion. Id. Green does not complain that
his consent was involuntary. Moreover, the record supports the finding that consent was
voluntary, and we are not at liberty to disturb it. See White, 21 S.W.3d at 645-46; Carmouche
v. State, 10 S.W.3d 323, 331 (Tex. Crim. App. 2000).
      Because Green consented to the search, we need not address the warrant exception issues of
plain view or exigent circumstances. We conclude that the officers lawfully searched the premises
and seized the evidence. Accordingly, we overrule point one.
      The judgment of the trial court is affirmed. 


 
REX D. DAVIS
                                                                         Chief Justice

Before Chief Justice Davis,
      Justice Vance, and
      Justice Gray
Affirmed
Opinion delivered and filed October 17, 2001
Do not publish
[CRPM]