Opinion filed January 10, 2008











 
 
  
 
 







 
 
  
 
 




Opinion filed January 10,
2008

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh
Court of Appeals

                                                                   __________

 

                                                          No. 11-06-00089-CR 

                                                    __________

 

                                  JOHN PAUL PROCTER, Appellant

 

                                                             V.

 

                                        STATE
OF TEXAS, Appellee

 



 

                                          On
Appeal from the 29th District Court

 

                                                      Palo
Pinto County, Texas

 

                                                    Trial
Court Cause No. 13026

 



 

                                                                   O
P I N I O N

 

The
jury convicted John Paul Procter of possession of ephedrine, anhydrous ammonia,
ether, methanol, and salt with the intent to manufacture methamphetamine.  The
trial court sentenced Procter to fourteen years confinement and a fine of
$2,500.  Procter challenges his conviction with one issue contending that the
trial court erroneously denied his motion to suppress.  Because the evidence
supports the trial court=s
finding that the officers were involved in a legitimate administrative search,
we affirm. 








We
review the trial court=s
denial of a motion to suppress for an abuse of discretion.  Oles v. State,
993 S.W.2d 103, 106 (Tex. Crim. App. 1999).  We must give almost total
deference to the trial court=s
determination of the historical facts as long as the record supports the
findings.  Montanez v. State, 195 S.W.3d 101, 106 (Tex. Crim. App.
2006).  We must afford the same amount of deference to the trial court=s rulings on the
application of law to fact questions if the resolution of those ultimate
questions turns on an evaluation of credibility and demeanor.  Guzman v.
State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  We conduct a de novo
review where the resolution of mixed questions of law and fact do not turn on
an evaluation of credibility and demeanor.  Id.

It is undisputed that Department of Public Safety
troopers found the substances, the possession of which resulted in Procter=s prosecution, while
conducting a warrantless search of a trailer in a salvage yard.  It is a
cardinal principle that warrantless searches are per se unreasonable under the
Fourth Amendment subject only to a few specifically established and well-delineated
exceptions.  Mincey v. Arizona, 437 U.S. 385, 390 (1978).  The State
argues that no warrant was required because this was a legitimate
administrative search.  The United States Supreme Court has held that a
warrantless administrative search is reasonable if three criteria are met:

1.         There must be a substantial government interest that gives
rise to the regulatory scheme under which the search is made;

 

2.         The warrantless search must be necessary to further the
regulatory scheme; and

 

3.         The certainty and regularity of the application of the
regulatory scheme must provide an adequate substitute for a warrant.

 

New York v. Burger, 482 U.S. 691, 702-03 (1987).








Salvage
vehicle operations are a regulated activity.  See Tex. Transp. Code Ann. '' 501.091-.107 (Vernon
2007).  These regulations extend to salvage vehicle dealers, which are defined
as Aa person engaged
in this state in the business of acquiring, selling, dismantling, repairing,
rebuilding, reconstructing, or otherwise dealing in nonrepairable motor
vehicles, salvage motor vehicles, or used parts.@ 
Section 501.091(17).  Dealers must obtain a license pursuant to Tex. Occ. Code Ann. ' 2302.101 (Vernon
2004), and they must comply with reporting requirements when acquiring a
vehicle for the purpose of dismantling, scrapping, or destroying it.  See
Section 501.096.  Licensed salvage vehicle dealers, as well as those who engage
in the salvage vehicle business, consent to entry and inspection of their
business by the police at any reasonable time to inspect or copy any document,
record, vehicle, part, or other item.  Tex.
Occ. Code Ann. ' 2302.0015 (Vernon 2004). 

We
need not decide whether this regulatory scheme satisfies the Burger
criteria because Procter does not challenge the validity of Section 2302.0015
but, rather, its application to him.  Procter argues first that there was no
evidence that he owned the property or that he was running a regulated
business.  This argument misstates the State=s
burden.  The State was not required to show that Procter owned the property or
was operating a salvage yard but was only required to show that a salvage yard
was being operated on the property.  There was ample evidence in support of
this proposition.

Approximately
one month before the challenged search, Palo Pinto County Deputy Sheriff Marty
Holifield went onto the property to look for a possible stolen vehicle.  While
there, he noticed the large number of vehicles and asked Procter about them. 
Procter responded that he salvaged parts for resale.  During this same time
frame, the DPS received information from the Stephenville Police Department
that stolen vehicles were being transported to the property, and a DPS
investigator arranged for a helicopter fly-over.  An estimated eighty cars, two
mobile homes, and a wrecker towing a car were observed.  DPS officers entered
the property two days later around 9:00 or 9:30 a.m.  They noticed that 80%-90%
of the cars had missing parts, that some were on jacks, and that it appeared that
the cars were being worked on.  The trial court did not err by finding that a
regulated business was in operation on the property.

Procter
next argues that the administrative search was a pretext for a fishing
expedition and contends that the officers had no legitimate reason to go into
the trailer because they had already been in his office and knew there were no
weapons.  We cannot agree with Procter=s
summary of the officer=s
knowledge.  When the officers first entered the property, they did not see
anyone present.  Sergeant Bill Cooper testified that they began to look for
someone and that the trailer door was opened in the process.  Sergeant John
Buesing testified that, when the door was opened, auto parts were observed but
that no one went inside the trailer.








Moreover,
the State is not contending that Sergeant Buesing was authorized to enter the
office to conduct a weapons sweep.  The State argues that he was authorized to
enter the office pursuant to Section 2302.0015.  The weapons sweep was Sergeant
Buesing=s reason for
entering before Procter.  The Supreme Court has excepted administrative
searches from the Fourth Amendment=s
warrant requirement because the owner or operator of commercial premises in a
closely regulated industry has a reduced expectation of privacy in his
premises.  Burger, 482 U.S. at 702.  We recognize that this does not
give officers unbridled discretion to search without regard to the statute=s intended purpose.  See
Crosby v. State, 750 S.W.2d 768, 777-78 (Tex. Crim. App. 1988).  However,
unlike Crosby, the officers were not searching a self-selected location
to assuage their curiosity.  They went to the office because Procter led them
there.  

When
Procter was asked about his paperwork, he said that it was in his office and
took  Sergeant Buesing there.  Procter suggests that he was attempting to get
the records for Sergeant Buesing.  However, the testimony was that Procter was
taking Sergeant Buesing to view the records.  Whether Procter intended
that Sergeant Buesing view the records inside or outside the trailer, we need
not resolve.  Section 2302.0015 allows officers to inspect books and
records.  This is broader than the right to simply see them.  When Procter
indicated that his records were inside the trailer, Sergeant Buesing was
authorized to enter it.

Procter
unlocked the office and Sergeant Buesing entered first and swept it for
weapons.  Sergeant Buesing immediately saw a syringe, mirror, and razor blade
in plain view.  During his sweep, Sergeant Buesing also saw several glass
containers with liquids.  Sergeant Buesing called for assistance from a DPS
narcotics officer.  Trooper Darla Dowel arrived, looked at the office, and
determined that it was being used as a meth lab.  Because Sergeant Buesing was
authorized to enter the trailer and because the evidence he saw inside was in
plain view, its observation and subsequent seizure did not involve an invasion
of privacy.  Walter v. State, 28 S.W.3d 538, 541 (Tex. Crim. App.
2000).  Procter=s
issue is overruled.

The
judgment of the trial court is affirmed.

                                                                               

 

RICK STRANGE

JUSTICE

January 10, 2008

Do not publish. 
See Tex. R. App. P. 47.2(b).

Panel consists of: Wright, C.J.,
and

McCall, J., and Strange, J.