IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. 74,458






RONNIE PAUL THREADGILL, Appellant



v.



THE STATE OF TEXAS





ON DIRECT APPEAL


FROM NAVARRO COUNTY






 Meyers, J., delivered the opinion of the Court, in which Keller, P.J., and
Womack, Keasler, Hervey, Holcomb, and Cochran, JJ., join. Price and Johnson, JJ.,
concur. Womack, J., filed a concurring opinion, in which Price, Johnson, and Cochran,
JJ., joined. 


O P I N I O N




 Appellant was convicted in July, 2002 of capital murder. Tex. Penal Code Ann. §
19.03(a). Pursuant to the jury's answers to the special issues set forth in Texas Code of
Criminal Procedure Article 37.071, §§ 2(b) and 2(e), the trial judge sentenced appellant to
death. Art. 37.071, § 2(g). (1) Direct appeal to this Court is automatic. Art. 37.071, § 2(h). 
Appellant raises twenty-two points of error. We affirm.

 In his first point of error, appellant claims that the trial court erred in denying his
motion to suppress blood evidence taken from his clothing. (2) Following the shooting of a
passenger in a car stolen by appellant, appellant was arrested and charged with unauthorized
use of a motor vehicle and a parole violation. Pursuant to standard Navarro County jail
procedures, appellant was given a jail uniform, and his clothes and personal effects were
inventoried and placed into paper bags to prevent contamination. The clothes were
forwarded to a Department of Public Safety (DPS) laboratory for DNA analysis because
officers believed there might be blood on them. (3) Analysis revealed that the blood on
appellant's clothes matched the blood of the victim. Appellant moved to suppress the
evidence on the ground that the clothes should not have been tested without a warrant. The
trial court denied appellant's motion, ruling the search incident to a valid arrest. Appellant
argues that the DNA analysis of the blood on his clothes was an invalid search because it
was conducted without a search warrant.

 In Oles v. State, 993 S.W.2d 103 (Tex. Crim. App. 1999), we granted the appellant's
petition for discretionary review to decide whether "law enforcement, without a search
warrant, may test the clothing of a person lawfully arrested and in custody for one offense
in order to investigate that person's involvement in another (a second) offense, when there
are no exigent circumstances to justify the warrantless testing, nor is there probable cause
to test the clothing for the second offense." Id. at 104-05. We concluded that police may
examine and test clothing validly within their control and custody, regardless of the
existence of probable cause or exigent circumstances. Id. at 109. We further stated that
"once it is determined that police lawfully seized the personal effects of an arrestee, his
expectation of privacy is diminished in those effects until he can and does exhibit
subjective expectations through his conduct, presumably at the time of release from
detainment or incarceration." Id. at 110 (emphasis in original). In the absence of any
evidence that the appellant harbored a subjective expectation of privacy in his clothing that
was in police custody or any evidence that society would deem such belief reasonable, we
held that the appellant's clothing did not fall under the protection of the Fourth Amendment
and therefore the warrantless search was valid and reasonable. Id. at 110-11.

 Appellant points to no evidence that he possessed a subjective expectation of
privacy in his clothing that was in police custody. Since there was no reasonable
expectation of privacy and the search of the clothing was not unreasonable under the
circumstances, the trial court did not abuse its discretion by denying appellant's motion to
suppress the DNA results. Id. Point of error one is overruled.

 In his second point of error, appellant claims that the evidence is legally insufficient
to support his conviction. He claims that the evidence is insufficient in three respects. He
claims it does not support the findings that he was the offender, that he had intent to kill the
victim, or that the murder occurred in the course of robbing the victim.

 On the evening of April 14, 2001, a birthday party was held at the Pleasure Garden
Club in Navarro County for Christopher Lane and his sister, Mona Lane. The party ended
sometime between 2:00 and 4:00 a.m. Dexter McDonald and Kevin Williams planned to
ride home with Christopher. Williams got in the front passenger seat of Christopher's car
and McDonald got in the back. Christopher was driving. Before leaving Pleasure Garden,
Christopher got out of the car to talk to someone and left the car running with the driver's
side door open. Christopher testified he left Williams and McDonald in possession of his
vehicle. Christopher then heard gunshots and saw his car being driven out of the parking
lot. The car stopped at the stop sign at the access road and then headed north on Interstate
45 toward Dallas. Williams had jumped out of the car before it left the Pleasure Garden
parking lot, but the driver pulled McDonald from the car and left him on the ground when
the car stopped at the stop sign. Friends took McDonald to the hospital where he died of a
gunshot wound to the chest.

 Danyel Dwayne Nellums attended the birthday party and was in the parking lot
afterwards. He was walking toward Christopher's car when he saw a man run from behind
the car and jump into the driver's seat. According to Nellums, the man fired a shot and
Williams jumped out. The man fired a second shot, which struck McDonald, and drove off. 
The man was wearing blue jeans and a white T-shirt. He had a bandana over the lower part
of his face and was carrying a black pistol. Although Nellums stated that he was not able to
identify the shooter in a lineup because of the bandana, he nonetheless testified that he
recognized the shooter as a person he saw earlier in the night sitting in an old car parked
next to Christopher's car in the Pleasure Garden parking lot. (4) Nellums identified appellant
in the courtroom as the person he saw that night, stating that he was "positive" it was him.

 Mona Lane testified that she did not see the shooter's face, but saw him from the
back. He was wearing blue jeans, a white T-shirt, and dark shoes. She testified that a car
she had seen parked in the club's parking lot earlier in the night pulled up beside her
brother's car, and the driver jumped out and ran around Christopher's car, yelling to the
passengers to get out. Then she heard gunshots. She testified that she had seen the shooter
earlier in the night sitting in the driver's seat of a car outside of the club. She identified
appellant as the man she saw earlier in the night sitting in the driver's seat of a car in the
parking lot.

 The incident was immediately reported to police, and a dispatch went out for the
stolen vehicle. Officers with the Ennis Police Department heard the dispatch and saw a
vehicle matching the given description traveling on I-45. The officers pursued the vehicle
with their sirens on and lights flashing. The vehicle exited the freeway and attempted to
turn the wrong way onto the one-way service road. The driver slammed on the brakes and
skidded into a ditch, disabling the vehicle. The driver got out of the vehicle and ran to a
nearby Mobil Station where a number of semi-trucks were parked. The officers surrounded
the station, and found Appellant hanging from the axle underneath a semi-truck trailer. A
bandana was found stuffed under the frame of the trailer where he was hiding. He was
wearing blue jeans and a white T-shirt. Ennis police officer Randy Owen identified
appellant as the person he saw get out of Christopher's vehicle and the person who was
found hiding under the truck. Appellant's fingerprints were matched to fingerprints lifted
from the rear passenger door of Christopher's vehicle. The blood of the victim matched
blood on appellant's clothes.

 Appellant called Kevin Williams, the passenger who escaped from the front seat of
the car before it left the Pleasure Garden parking lot. Williams testified that he did not get
a good look at the shooter because of the scarf obscuring his face from the middle of his
nose down. However, he testified that he believed the skin color of the shooter was a little
lighter than appellant's. When questioned further by appellant's counsel, he stated that he
was positive the shooter was lighter than appellant. When questioned by the prosecutor,
however, Williams agreed that he was not saying that appellant was not the shooter, that he
could have been. On re-direct Williams reiterated that he was positive the person who got
in the car was a lighter skin color than appellant. Again, on re-cross Williams agreed that
he was not saying the shooter was not appellant and he agreed that it could have been. 

Identity


 Appellant concedes that the evidence is sufficient to show he was at the scene prior
to the shooting and that he later obtained the stolen car, but claims the evidence is legally
insufficient to show that he was the shooter. He argues that the DNA and fingerprint
evidence shows only that he might have been in the car when the shootings occurred but
does not establish that he was the shooter. He hypothesizes that the shooter could have
abandoned the car after leaving Pleasure Garden but before the pursuit by the Ennis Police,
and appellant could have obtained it at that point. 

 In assessing the legal sufficiency of the evidence, the reviewing court considers all
of the evidence in the light most favorable to the verdict to determine whether any rational
trier of fact could have found the essential elements of the offense beyond a reasonable
doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). The Jackson standard of review
"gives full play to the jury's responsibility fairly to resolve conflicts in the evidence, to
weigh the evidence, and to draw reasonable inferences from the evidence." Garcia v. State,
57 S.W.3d 436, 441 (Tex. Crim. App. 2001), cert. denied, 537 U.S. 1195 (2003). Nellums
witnessed the shooting and identified appellant in the courtroom as the shooter. He stated
that he was "positive" appellant was the man he saw jump into Christopher's car and shoot
McDonald. He described the shooter as wearing blue jeans and a white T-shirt. Mona
testified that she saw appellant sitting in a car in the parking lot of the club during the party. 
Mona described the shooter as wearing blue jeans and a white T-shirt. Owen identified
appellant as the person who exited and ran from Christopher's vehicle and as the same
person who was apprehended at the Mobil station. Appellant was placed at the scene of the
shooting, was identified as the shooter and the person who stole Christopher's vehicle, and
was identified as the person who was driving Christopher's car when apprehended a short
time later. These identifications, plus the blood and fingerprint evidence, viewed in a light
most favorable to the verdict, were sufficient to support a rational jury's finding beyond a
reasonable doubt that appellant was the shooter.

Intent


 Appellant relies on Williams' testimony that the shooter fired the shots and then
said, "Get out of the car" to argue that the evidence is insufficient to establish that he
intended to kill anyone. He says he would not have intended to kill the victim if he then
yelled at him to get out of the car.

 Regardless of anything appellant said before or after he fired the shots, he fired a
deadly weapon at close range at the victim who was lying or sitting in the backseat of the
car that appellant was attempting to steal. The evidence is sufficient to support a rational
jury's finding beyond a reasonable doubt that appellant intentionally caused the victim's
death.

Robbery


 Appellant argues that because the victim was not the owner of the car, but was only a
passenger in the vehicle, the evidence is legally insufficient to prove that appellant robbed
him. The jury was instructed that appellant was guilty of capital murder if it found that
appellant "did intentionally cause the death of Dexter McDonald by shooting him with a
gun, while said defendant was then and there in the course of committing or attempting to
commit the offense of robbery of Dexter McDonald." The definitional portion of the jury
charge provided that:

 A person commits a robbery if, in the course of committing theft, as defined
hereinafter, and with intent to obtain or maintain control of the property, he


 (a) intentionally, knowingly, or recklessly causes bodily injury to
another, or

 (b) intentionally or knowingly threatens or places another in fear of
imminent bodily injury or death.


 . . . "Theft" as used herein is the unlawful appropriation of the corporeal
personal property of another, with the intent to deprive such other person of
said property.


 "Appropriation" and "appropriate," as those terms are used herein,
mean to acquire or otherwise exercise control over property other than real
property. Appropriation of property is unlawful if it is without the owner's
effective consent.


 . . . "Owner" means a person who has title to the property, possession of the
property, or a greater right to possession of the property than the person
charged. "Possession" means actual care, custody, control, or management
of the property.

Under the definitions given in the jury charge, the victim was the "owner" of the vehicle if
he had title to it, possessed it, or had a greater right to possess it than appellant. The title
owner of the vehicle, Christopher Lane, testified that he left the victim and Kevin Williams
in possession of the vehicle while he stepped out of it for a minute. He also testified that
appellant did not have his permission to be in possession of the vehicle. The evidence is
sufficient for a rational jury to find beyond a reasonable doubt that the victim was in
possession of the vehicle and had a greater right to possess it than appellant. Point of error
two is overruled.

 In his third point of error, appellant claims that the evidence is factually insufficient
to establish his identity as the offender and to establish his intent to kill the victim. In a
factual sufficiency review, the appellate court views all the evidence in a neutral light and
determines whether evidence supporting the verdict is too weak to support the finding of
guilt beyond a reasonable doubt or if evidence contrary to the verdict is strong enough that
the beyond-a-reasonable-doubt standard could not have been met. Zuniga v. State, No.
539-02, 2004 Tex. Crim. App. LEXIS 668, at *20 (Tex. Crim. App. April 21, 2004).

Identity


 Appellant argues that the State's case is based almost entirely on circumstantial
evidence, that the person best-positioned to see the shooter testified that appellant had
darker skin than the shooter, and that there is no evidence regarding the time or distance
between the shooting and appellant's apprehension. 

 Despite some minor inconsistencies in the testimony, the evidence is not too weak
to support the finding of guilt beyond a reasonable doubt. Apellant was identified by two
people as being present in the parking lot outside the club during the party. Nellums
testified he was "positive" appellant was the shooter. He described appellant as wearing
blue jeans, a white T-shirt, and having a bandana over his face. Officer Owen identified
appellant as the man who fled the stolen vehicle following the police pursuit and who was
later apprehended at the truck stop. Appellant was wearing blue jeans and a white T-shirt,
and a bandana was found near him when he was apprehended. Also weighing in favor of a
finding that appellant was the shooter is the evidence of appellant's fingerprints on the
vehicle and the victim's blood on appellant's jeans. Evidence weighing against a finding of
appellant as the shooter includes Nellums' inability to identify appellant in a photo lineup
the day after the shooting, and Williams' testimony for the defense that he was positive that
the skin color of the shooter was lighter than appellant's. On the whole, the evidence is not
so weighted against a finding of appellant as the offender that the guilty verdict should not
stand.

Intent


 Appellant argues that the testimony that the shooter shot twice and then said to get
out of the car, and that the victim was pulled from the car at the stop sign, support a
conclusion that the shooter "wanted the occupants to get out of the car, not that he intended
to kill anyone." Even if the shooter's main objective was to steal the car, such an objective
does not foreclose or weigh against a finding that the shooter intentionally killed the victim
when he shot at him at close range in the back of the car. The two objectives are not
mutually exclusive. The evidence is factually sufficient to support a finding of intent to
kill. Point of error three is overruled.

 In his fourth point of error, appellant claims that the trial court erred in failing to
instruct the jury on the lesser-included offenses of felony murder and murder. A two-step
test applies when assessing whether a charge on a lesser-included offense should be given. 
Feldman v. State, 71 S.W.3d 738, 750 (Tex. Crim. App. 2002). The first step is to
determine whether the offense is actually a lesser-included offense of the offense charged. 
Id. Murder is a lesser-included offense of capital murder. Id. Felony murder is a lesser-included offense of capital murder. Fuentes v. State, 991 S.W.2d 267, 272 (Tex. Crim.
App.), cert. denied, 528 U.S. 1026 (1999). The first prong of the test is satisfied.

 The second step of the test requires that the record contain some evidence that
would permit a rational jury to find that the defendant is guilty only of the lesser offense. 
Feldman, 71 S.W.3d at 750. There must be some evidence from which a rational jury
could acquit the defendant of the greater offense while convicting him of the
lesser-included offense. The evidence must establish the lesser-included offense as a valid
rational alternative to the charged offense. Id.

 The element distinguishing capital murder from felony murder is the intent to kill. 
Fuentes, 991 S.W.2d at 272. Felony murder is an unintentional murder committed in the
course of committing a felony while capital murder includes an intentional murder
committed in the course of robbery. Id. To be entitled to an instruction on felony murder
there must be some evidence that would permit a jury rationally to find the defendant had
the intent to commit robbery but not to cause the death of the victim. The evidence reflects
that appellant ran up to the car, leaned in, and fired two shots, the second one into the
backseat where the victim was seated. Appellant argues that some evidence suggests that
the shooter did not even know that the victim was in the car, claiming Kevin Williams
testified that the shots were fired from outside the car and that there was testimony that the
victim was "slumped over" in the backseat. A closer look at the portion of Williams'
testimony relied upon by appellant reflects that Williams did not testify the shots were
fired from outside the car:

 [Prosecutor]. Okay. You said he got into the front seat and you were still in
the car.


 [Williams]. He hadn't got into the car yet.


 Q. You said a gun was in your face?


 A. Uh-huh.


 Q. And you were sitting in the car. Was he standing outside the car pointing
a gun in your face?


 A. He was standing outside the car, bent over into the car.


Although the shooter was standing outside of the car when he fired the shots, he was leaning
into the car with his gun. Citing two pages of testimony, appellant also claims the evidence
reflects that the victim was "slumped over" on the backseat. Review of that portion of the
testimony reflects that the victim was intoxicated and was sitting in the backseat with his
head leaning against or resting on the window frame. The witness denied defense counsel's
suggestion that the victim was lying down or stretched out on the seat. The trial court did
not abuse its discretion in concluding that there was no evidence that would permit a jury
rationally to find that appellant did not intend to kill the victim when he fired at him at close
range inside the car.

 In a capital murder case in which there is some evidence that would permit the jury
to rationally find that the defendant committed murder under Texas Penal Code Section
19.02(a)(1), but that the additional element in Section 19.03 was not proved, the defendant
is entitled to a charge on the lesser included offense of murder. Moore v. State, 969
S.W.2d 4, 12 (Tex. Crim. App. 1998). In this case, the additional element is robbery. 
Appellant claims there "was no probative evidence that Dexter McDonald was the one that
was robbed." As outlined above, "owner" was defined in the court's charge as a person who
has title to the property, possession of the property, or a greater right to possession of the
property than the person charged. "Possession" was defined as actual care, custody,
control, or management of the property. There was evidence that the victim, who had
custody of the car, had a greater right to possession of the car than appellant. There was no
evidence that appellant had any right to possession of the vehicle or that the victim did not
have any right to be in possession of the vehicle. The trial court did not abuse its discretion
in concluding that there was no evidence that appellant did not commit or attempt to
commit a robbery. Point of error four is overruled.

 In his fifth point of error, appellant claims that the trial court erred in overruling his
objection to the prosecutor's argument at guilt or innocence that in thirty years as a
prosecutor, he had only two cases with fingerprint evidence. In closing argument at guilt or
innocence, appellant's counsel argued that it was suspicious that the only fingerprints found
on the car were appellant's. The prosecutor responded by arguing:

 These cops weren't lazy. They dusted that car and they found his fingerprints,
this guy's fingerprints, yeah, and then, they say, oh, well, the cops must have
fabricated it because they didn't find anything else.

 Fingerprints are so hard to find this witness testified to you about how
they're smudged, they're like this. I've been a prosecutor for 30 years I've
had two cases with fingerprints, this is the third.


Appellant objected in part on the ground that the argument was outside the record. His
objections were overruled. He again contends the argument was outside the record, and
was not harmless given the importance of the fingerprint evidence to the State's case.

 The prosecutor's reference to evidence in other cases that was not a part of the
record in this case was improper, and the trial court should have sustained appellant's
objection. Nonetheless, the argument was harmless. Appellant does not claim the error
was constitutional in nature. To the contrary, he cites Mosely v. State, 983 S.W.2d 249
(Tex. Crim. App. 1998), cert. denied, 526 U.S. 1070 (1999), as setting out the appropriate
harm analysis in these circumstances. In Mosley, the Court considered three factors when
assessing the impact of the harm arising from jury argument error under Rule of Appellate
Procedure 44.2(b), for non-constitutional error: (1) severity of the misconduct (the
magnitude of the prejudicial effect of the prosecutor's remarks), (2) measures adopted to
cure the misconduct (the efficacy of any cautionary instruction by the judge), and (3) the
certainty of conviction absent the misconduct (the strength of the evidence supporting the
conviction). Id. at 259.

 The degree of misconduct here was mild. Albeit inartfully, the prosecutor was
attempting to respond to appellant's argument that the fingerprint evidence was suspect. 
The comment was not reiterated or emphasized by the State and comprised a single
sentence within the State's argument. As to the second factor, the trial court gave no
curative instruction since it overruled appellant's objection. Finally, the evidence was
sufficiently strong absent the prosecutor's reference to the rarity of fingerprint evidence. 
Appellant was identified by witnesses as the person who entered and exited the vehicle. The
fingerprint evidence was not critically necessary to tie appellant to the vehicle. Given the
mild nature of the prosecutor's statement in light of the evidence as a whole, the error in
the statement was harmless. Point of error five is overruled.

 In his sixth point of error, appellant claims that the prosecutor erred by arguing at
the guilt or innocence phase in such a way as to strike at appellant over the shoulders of his
counsel. Appellant did not object to the prosecutor's argument and therefore failed to
preserve error. Cockrell v. State, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996), cert. denied,
520 U.S. 1173 (1997); Tex. R. App. Proc. 33.1. Point of error six is overruled.

 In points of error seven through ten, appellant complains that the trial court
erroneously overruled several of his challenges for cause. He complains that each
prospective juror had a bias against some phase of the law upon which he was entitled to
rely. A prospective juror who has a bias or prejudice against any phase of the law upon
which a party is entitled to rely is properly challengeable for cause. Feldman, 71 S.W.3d at
744; Article 35.16. The test is whether the bias or prejudice would substantially impair the
prospective juror's ability to carry out his oath and instructions in accordance with the law. 
Before a prospective juror can be excused for cause on this basis, however, the law must be
explained to him and he must be asked whether he can follow that law regardless of his
personal views. Id. Great deference is given to the trial court's decision because the trial
judge was present to observe the demeanor of the prospective juror and to listen to his tone
of voice. Id. Particular deference is given when the potential juror's answers are
vacillating, unclear or contradictory. Id.

 In point of error seven, appellant claims the trial court erred by denying his
challenge for cause to venireperson John Beacom. Appellant challenged Beacom for cause
based upon Beacom's statement to the prosecutor during voir dire that "with a child killer
or something I would vote the death penalty in a minute." Because neither party questioned
Beacom further about his statement, explained to him what the law requires, or asked
whether he could follow the law despite his personal views, he was not challengeable for
cause on this basis and the trial court did not abuse its discretion in denying appellant's
challenge. Id.

 In his eighth point of error, appellant claims that the trial court erred in denying his
challenge to venireperson Paula Murray. Appellant contends that Murray was challengeable
for cause because she would automatically give the death penalty in a case that did not
involve self-defense and would not consider mitigating evidence in assessing punishment. 
Appellant also claims Murray was challengeable because she did not understand the term
"mitigating circumstances."

 During voir dire by the State, Murray agreed that she would be able to listen to all of
the evidence and decide how each special issue should be answered. When the mitigation
issue was read to her, she stated that she understood it. During questioning by appellant's
counsel, Murray agreed that her position on the death penalty was reflected in her statement
on the jury questionnaire that "if someone kills someone for any reason other than self-defense they should have the same thing done to them." Then she gave two contradictory
answers as to whether she would necessarily find no mitigating circumstances in such a
case:

 [Defense counsel]. [A]ssuming that you've answered yes to Number One and
there is nothing in the record in the evidence that talks about self-defense and
your decision with regards to the guilt or innocence is to decide whether the
person does life imprisonment or death. Based on your answers to question
Number 22 it appears that you've pretty much decided that it's the death
penalty.


 [Murray]. Not necessarily. Depending, I mean, depending on all of the
evidence that's shown.


 * * *


 Q. But you've already decided that the evidence said he's guilty and there's,
it's a pretty cold-blooded murder and there's no self-defense or anything like
that and I'm saying based on your answer to question Number 22 it seems
like that you're not willing to consider anything other than the death penalty
with those being the facts, I'm saying is that true? If not, can you explain the
inconsistencies in your two answers?


 A. It would be true. 


When questioned further by the prosecutor, Murray could not think of any mitigating
circumstances that would change her answer on that issue. In response to further voir dire
by the State, Murray agreed that just because she could not think of any circumstances did
not mean that there might not be any number of factors that she would consider that might
lead her to answer yes to the mitigation issue. She agreed that she would take mitigating
circumstances into consideration and would not automatically answer in such a way as to
result in the death penalty. Upon further questioning by defense counsel, Murray again
stated that she could not think of a single mitigating circumstance in a case not involving
self-defense. When asked if she understood what "mitigation means" Murray stated she did
"to an extent" but she could not explain it. Appellant challenged Murray for cause on the
ground that she would not take mitigating circumstances into account and did not
understand the concept of mitigating circumstances. The trial court denied appellant's
challenge for cause.

 Neither party explained to Murray about following the trial court's instructions and
her oath, and neither asked about her ability to do so. Given the lack of explanation by the
parties as to what the law requires, Murray's vacillating and unclear answers, and the fact
that jurors are not required to give examples of factors they view as mitigating, the trial
court did not abuse its discretion in denying appellant's challenge for cause.

 In his ninth point of error, appellant claims that the trial court erred by denying his
challenge for cause to venireperson Deborah Hawkins. Appellant claims Hawkins was
challengeable for cause because she demonstrated a bias in favor of capital punishment and
against a life sentence in capital cases. Appellant relies on a statement made by Hawkins in
her juror questionnaire that "no one should be allowed to live for killing someone else." 
Appellant also points to a portion of Hawkins' voir dire when she became emotional in
response to questions about her brother-in-law's murder, and she stated that she would not
want someone with her mindset on the jury if she were on trial for murder.

 Despite Hawkins' statement in her juror questionnaire, she repeatedly stated during
her voir dire that she could be a fair and impartial juror and would listen to the evidence in
answering the issues. She agreed that a life sentence may be appropriate in some
circumstances. She stated that she could put any personal biases and experiences aside. 
When asked by the trial court whether she would follow the law and base her decision
solely on the evidence in the case, she agreed that she would. In light of Hawkins'
apparently contradictory responses, we defer to the trial judge who was best-positioned to
evaluate her demeanor and voir dire as a whole. Soria v. State, 933 S.W.2d 46, 66 (Tex.
Crim. App. 1996), cert. denied, 520 U.S. 1253 (1997). The trial court did not abuse its
discretion in overruling appellant's challenge for cause to Hawkins.

 In point of error ten, appellant claims the that trial court erred in denying his
challenge for cause to venireperson Roy Page. Appellant claims that Page was
challengeable for cause on the grounds that he would be unable to afford appellant his
presumption of innocence or right against self-incrimination, that he would give some
weight to the grand jury's indictment, and that his experiences regarding parole would
influence his verdict.

 Page, a former police officer, did express reservations about all of the issues
appellant claims rendered him challengeable for cause. However, despite candid
statements about his beliefs on these issues, Page consistently agreed that he would follow
the court's instructions and the law as given to him in the court's charge. The trial court did
not abuse its discretion when it denied appellant's challenge to Page. Points of error seven
through ten are overruled. 

 In point of error eleven, appellant claims that the trial court erred in overruling his
objection to testimony regarding the dismissal of a charge on an extraneous offense. 
During the punishment phase of appellant's trial, Limestone County Sheriff's Deputy R.T.
Beck testified that appellant was charged with a shooting in 1998, after he was identified as
the shooter in a police lineup. Beck testified that the lineup identification was made
without hesitation and was never recanted, but that the charges were later dropped. Beck
agreed that all of the victims and the perpetrators involved in the shooting incident had
extensive criminal records. Beck also agreed that the reason listed for dismissing the case
was conflicting evidence, but that cases are sometimes dismissed because of "who the
victims are or what they've done in the past." Appellant raised a timely objection to the
relevance of this last statement.

 Appellant argues that whether or not cases are sometimes dismissed because of who
the victims are and what they have done is not relevant to appellant's case and the
punishment issues. He argues that the error was made worse by the prosecutor's
suggestion in his jury argument that the Limestone County case was dismissed because the
victim was "a nobody" with a criminal record.

 "Relevant evidence" is evidence "having any tendency to make the existence of any
fact that is of consequence to the determination of the action more probable or less
probable than it would be without the evidence." Tex. R. Evid. 401. We disagree with
appellant that Beck's statement was irrelevant. The fact that prosecutors and courts
sometimes dismiss cases due to the less than ideal credibility of the victim or
identification witness may aid the jury in deciding whether the appellant had committed this
unadjudicated offense for which the charge against him was dismissed. Thus, it was not
error for the judge to overrule appellant's objection. Point of error eleven is overruled.

 In point of error twelve, appellant claims that the prosecutor committed reversible
error when he argued outside of the record in the punishment phase of trial that extraneous
offense charges against appellant were dismissed because the victim was "a nobody" and
had a criminal record. Appellant concedes that no objection was lodged against the
allegedly improper argument, but argues that "when a jury argument is manifestly improper,
an objection is not necessary to preserve the issue for appeal." Appellant points to
Janecka v. State, 937 S.W.2d 456, 474 (Tex. Crim. App. 1996), cert. denied, 522 U.S. 825
(1997), in which the Court stated, "[w]ithout timely and specific objections, the question of
allegedly improper closing arguments is not preserved for review unless manifestly
improper." (Emphasis added by appellant). Appellant notes that Janecka was decided after
Cockrell, 933 S.W.2d at 89.

 In Cockrell, the Court held a defendant's failure to object to a jury argument or to
pursue to an adverse ruling his objection to a jury argument forfeits the right to complain
about the argument on appeal. Id. The Court further held that precedent allowing a
defendant to complain for the first time on appeal about an unobjected-to, erroneous jury
argument that was so prejudicial it could not have been cured by an instruction to disregard
was expressly overruled. Id. Appellant suggests that since Janecka was decided after
Cockrell, Janecka controls. 

 If the Court had intended in Janecka to reinstate the pre-Cockrell rule just five days
after the mandate issued in Cockrell, it would have expressly stated so. This Court has
followed Cockrell many times. See Mathis v. State, 67 S.W.3d 918, 927 (Tex. Crim. App.
2002)(declining defendant's invitation to overrule Cockrell, and reaffirming rule that even
if argument is such that it could not be cured by an instruction, defendant is required to
object and request mistrial). Moreover, the statement in Janecka was dictum given that the
argument in that case was not "manifestly improper." Cockrell remains the law. Because
appellant failed to object to the jury argument, he has forfeited his right to raise the issue
on appeal. Point of error twelve is overruled.

 In point of error thirteen, appellant claims that the trial court erred by overruling his
objection to the introduction of photographs of bombs and weapons made by inmates on the
ground that any probative value in such evidence was outweighed by the danger of unfair
prejudice. (5) At the punishment phase of trial, appellant called Joseph Keith Price, Prison
Warden of the Clements Unit of the Texas Department of Criminal Justice. Price testified
about the prison classification system and controls in place to maintain security and safety
within the prison system. In rebuttal, the State called A.P. Merillat, a criminal investigator
for the Special Prosecution Unit, the entity responsible for prosecuting crimes committed
within the prison system. Merillat testified that violence was prevalent within the prison
system. Merillat described weapons handmade by inmates, and the photographs at issue
were offered in connection with that testimony.

 Generally, photographs are admissible if verbal testimony about the matters
depicted in the photographs would be admissible and their probative value is not
substantially outweighed by any of the Rule 403 counter-factors. Erazo v. State, No.
2206-02, 2004 Tex. Crim. App. LEXIS 1007 (Tex. Crim. App. June 16, 2004). The
evidence regarding weapons made by prison inmates was at least marginally relevant to the
testimony concerning inmate violence within various classifications of prison society. 
Rule 403 favors the admission of relevant evidence and carries a presumption that relevant
evidence will be more probative than prejudicial. Id. The photos helped to illustrate
Merillat's testimony. We see nothing about the photos that rendered their probative value
substantially outweighed by their unfair prejudicial effect, and appellant does not articulate
anything to suggest otherwise. The trial court was within the zone of reasonable
disagreement in overruling appellant's Rule 403 objection. Moreno v. State, 22 S.W.3d
482, 487 (Tex. Crim. App. 2003). Point of error thirteen is overruled.

 In his fourteenth point of error, appellant claims that the trial court erred by denying
his motion to hold Article 37.071, §§ 2(e) and 2(f) unconstitutional because they fail to
require the jury to consider mitigation. Appellant does not explain in what way the statute
fails to do this.

 When mitigating evidence is presented, the constitution requires a vehicle by which
the jury can consider and give effect to mitigating evidence relevant to a defendant's
background, character, or the circumstances of the crime. Raby v. State, 970 S.W.2d 1, 8
(Tex. Crim. App.), cert. denied, 525 U.S. 1003 (1998). Jurors individually determine what
evidence, if any, mitigates against the imposition of the death penalty and what weight, if
any, to give that evidence in its consideration. Id. Moreover, Article 37.071 § 2(e)
provides that the jury "shall" answer the mitigation issue which directs "consideration of all
of the evidence, including the circumstances of the offense, the defendant's character and
background, and the personal moral culpability of the defendant." Article 37.071 is
constitutional because it requires the jury to consider all of the evidence and determine
"[w]hether . . . there is a sufficient mitigating circumstance or circumstances to warrant that
a sentence of life imprisonment rather than death be imposed." The trial court did not
abuse its discretion by denying appellant's motion. Point of error fourteen is overruled.

 In his fifteenth point of error, appellant claims that the trial court erred by denying
his motion to hold Article 37.071 unconstitutional because it shifts the burden of proof to
the accused to prove a mitigating circumstance. We have addressed and rejected identical
claims. Blue v. State, 125 S.W.3d 491, 501 (Tex. Crim. App. 2003); Cantu v. State, 939
S.W.2d 627, 641 (Tex. Crim. App.), cert. denied, 522 U.S. 994 (1997). Point of error
fifteen is overruled. 

 In his sixteenth point of error, appellant claims that the trial court erred by denying
his motion to preclude the death penalty as a sentencing option because the Texas death-penalty scheme violates an accused's right to equal protection under the Fourteenth
Amendment to the United States Constitution. Appellant argues that because Article
37.071 fails to provide a mechanism by which the state determines the death worthiness of
the Defendant, it does not provide "some assurance that the rudimentary requirements of
equal treatment and fundamental fairness are satisfied." Appellant points out that decision-making varies widely from county to county. Appellant relies on Bush v. Gore, 531 U.S.
98 (2000). We have addressed and rejected such claims. Rayford v. State, 125 S.W.3d
521, 534 (Tex. Crim. App. 2003). Relying on Apprendi v. New Jersey, 530 U.S. 466
(2000), appellant also argues that the future-dangerousness issue should be included in the
indictment and passed upon by the grand jury. This issue has been addressed and rejected as
well. Rayford, 125 S.W.3d at 533. Point of error sixteen is overruled.

 In point of error seventeen, appellant claims that the trial court erred by denying his
motion to preclude the prosecution from seeking the death penalty because of the arbitrary
way in which it is administered, resulting in cruel and unusual punishment in violation of the
Eighth Amendment. Appellant points to the various capital-sentencing schemes enacted in
Texas since Furman (6) and argues that such inconsistency amounts to the quintessential
arbitrariness condemned by Furman. We have addressed and rejected similar claims,
holding that "the disparate treatment created in our capital punishment scheme by the
amendments to Article 37.071 is of a different nature than that which was found
unconstitutional in Furman." Matchett v. State, 941 S.W.2d 922, 933 (Tex. Crim. App.
1996), cert. denied, 521 U.S. 1107 (1997). Moreover, the two versions of death- penalty
sentencing currently in effect (one applicable to offenses committed prior to September 1,
1991, and the amended version applicable to offenses committed on or after September 1,
1991), do not present an equal protection problem because "those committing the same
offense on the same day are subject to the same statutory scheme, [so] they are similarly
situated and are similarly treated." Id. Point of error seventeen is overruled.

 In his eighteenth point of error, appellant claims that the trial court erred by
overruling his objections to the court instructing the jury at punishment to decide issues
not contained in the indictment. Relying on Apprendi v. New Jersey, 530 U.S. 466 (2000),
appellant complains of the jury's passing on the future-dangerousness issue and the
mitigation issue when such issues were not alleged in the indictment. "A defendant indicted
for capital murder is effectively put on notice that the special issues under Article 37.071
will be raised, so such procedural provisions need not be alleged in the indictment." 
Moore, 969 S.W.2d at 13. Neither does Apprendi compel the State to allege the
punishment issues contained in Article 37.071 in the indictment. Rayford, 125 S.W.3d at
533. Point of error eighteen is overruled.

 In point of error nineteen, appellant claims that his death sentence violates the
Eighth Amendment to the United States Constitution in that it is cruel and unusual. He
contends that imposition of the death penalty in his case particularly, and in all capital
cases, violates "evolving standards of decency that mark the progress of a maturing
society." The death penalty does not violate the Eighth Amendment. Jurek v. Texas, 428
U.S. 262 (1976); Canales v. State, 98 S.W.3d 690, 700 (Tex. Crim. App.), cert. denied,
124 S.Ct. 806 (2003). Appellant does not assert anything about the facts of his particular
case that would render the imposition of the death penalty unconstitutional as applied to
him. Point of error nineteen is overruled. 

 In point of error twenty, appellant claims that his conviction should be reversed and
remanded for a new trial because the system used to select the grand jury that indicted him
is unconstitutional. Appellant complains for the first time on appeal of the use of the "Key
Man System" and asserts, without authority or argument, that he "may challenge the grand
jury for the first time on Appeal." Appellant has failed to cite any authority or set forth any
argument in support of his contention that the unobjected-to issue is properly presented for
review. Appellant has forfeited his claims. Tex. R. App. P. 33.1 & 38.1(g). Point of error
twenty is overruled.

 In point of error twenty-one, appellant claims that the trial court erred by overruling
his objection to the charge at punishment for its failure to instruct the jury that a single
hold-out juror on the mitigation issue would result in a life sentence. Appellant
acknowledges precedent from this Court to the contrary, but claims that such authority is
contrary to United States Supreme Court precedent mandating heightened responsibility in
death-penalty cases. We have consistently held that "[t]here is no constitutional prohibition
to concealing from the jurors the consequences of their deliberations, so long as they are
not misled into believing that ultimate responsibility for the verdict rests elsewhere." 
Prystash v. State, 3 S.W.3d 522, 532 (Tex. Crim. App. 1999), cert. denied, 529 U.S. 1102
(2000). We are not persuaded that there is any inconsistency between such precedent and
Supreme Court authority on this issue. Point of error twenty-one is overruled.

 In his twenty-second point of error, appellant claims that the trial court erred by
denying his motion to allow the defense to close arguments on mitigation. Article 36.07
provides that "[t]he order of argument may be regulated by the presiding judge; but the
State's counsel shall have the right to make the concluding address to the jury." The trial
court did not abuse its discretion by denying appellant's request to close the arguments. 
Point of error twenty-two is overruled. 

 The judgment of the trial court is affirmed.


Delivered: October 13, 2004


Publish

1. Unless otherwise indicated, all references to Articles refer to the Texas Code of Criminal
Procedure.
2. On appeal, appellant claims that his rights were violated under the Fourth Amendment to the
United States Constitution, Article I § 9 of the Texas Constitution, and Article 38.23. At trial, appellant
did not cite or refer to any particular law he claimed was violated, either orally or in his written motion. In
ruling the search valid as incident to arrest, the trial court applied general Fourth Amendment law. Because
appellant did not ask the trial court to make a ruling on the basis of any other law, appellant's claim on
appeal is therefore limited to the context of the Fourth Amendment. Tex. R. App. P. 33.1. Appellant also
argues the search was not justified as incident to arrest because the State produced no evidence that he
was lawfully arrested, but he failed to make this argument at trial. Tex. R. App. P. 33.1.
3. The officer who sent the clothes to the DPS lab testified that he was told there was blood on
them by another officer. Although the other officer testified that he could not recall apparent blood or stains
on the clothing, the clothing was handled in a manner consistent with evidence requiring laboratory analysis.
4. It is worth noting that it was not made clear on direct- or cross-examination of Nellums, or
through any other witness, whether or not appellant's photo was even included among those shown to
Nellums in the photo lineup.
5. Appellant also claims that the photos were irrelevant, but because he failed to object on the basis
of relevance at trial, that issue is not preserved for review. Tex. R. App. P. 33.1.
6. Furman v. Georgia, 408 U.S. 238 (1972).