IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-06-00413-CR

 

Kevin Lee Johnson,

                                                                                    Appellant

 v.

 

The State of Texas,

                                                                                    Appellee

 

 

 



From the County Court at Law No.
2

Brazos County, Texas

Trial Court No. 04-01878-CRM-CCL2

 



MEMORANDUM  Opinion



 








            A jury convicted Kevin Lee Johnson of
unlawfully carrying a weapon and the court sentenced him to four days in jail
and a $400 fine.  In four points of error, Johnson challenges: (1) the legal
and factual sufficiency of the evidence to support his conviction; (2) the
court’s refusal to instruct the jury on the traveling defense; (3) the court’s granting
of the State’s challenge for cause to a member of the venire panel; and (4) the
court’s denial of his motion to suppress.  We affirm.

 

FACTUAL BACKGROUND

On the day of the offense, Johnson was a patron at
the College Station Library.  Library employees grew concerned and contacted
the police after noticing Johnson’s strange behavior and his red, swollen, watery
eyes.  Officers Robert Shumaker and Steven DuBois found Johnson sitting in a van
parked in the library parking lot.  Shumaker inquired whether Johnson was okay and
asked him to exit the van.

The officers noticed that Johnson’s eyes were
“very red, puffy, glassy and bloodshot,” he was having difficulty walking, and
his breath smelled of alcohol.  They also observed a container of medicine
bottles located in the console of the van.  They suspected that Johnson might
be intoxicated.  Johnson refused to perform field sobriety tests, consent to a
search of the van, or allow officers to inspect the container.  Shumaker
contacted the narcotics office.  When narcotics Officer Chad Hanks arrived at
the scene, Johnson gave him the container.  One medication was prescribed to
Johnson’s wife, from whom he was separated.  Shumaker arrested Johnson for
possession of a dangerous drug, and the officers searched the van, wherein they
discovered the gun.

LEGAL AND FACTUAL SUFFICIENCY

            In his first point, Johnson contends
that the evidence is legally and factually insufficient to support his
conviction because he possessed the gun on his premises.[1]

Standards of Review

Under legal sufficiency review, we determine whether, after
viewing all the evidence in the light most favorable to the verdict, any
rational trier of fact could have found the essential elements of the offense
beyond a reasonable doubt.  Curry
v. State, 30
S.W.3d 394, 406 (Tex. Crim. App. 2000) (citing Jackson
v. Virginia, 443
U.S. 307, 318-19, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979)). 
We do not resolve any conflict of fact or assign credibility to the witnesses,
as this was the function of the trier of fact.  See Dewberry
v. State, 4
S.W.3d 735, 740 (Tex. Crim. App. 1999); see also Adelman
v. State, 828
S.W.2d 418, 421 (Tex. Crim. App. 1992); Matson
v. State, 819
S.W.2d 839, 843 (Tex. Crim. App. 1991).  Inconsistencies in the
evidence are resolved in favor of the verdict.  Curry, 30 S.W.3d at 406; Matson, 819 S.W.2d at 843.

Under factual sufficiency review, we ask whether a
neutral review of all the evidence demonstrates that the proof of guilt is so
weak or that conflicting evidence is so strong as to render the jury’s
verdict clearly wrong and manifestly unjust.  Watson v. State, 204 S.W.3d 404, 414-15 (Tex.
Crim. App. 2006); Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim.
App. 2000).  We review the evidence weighed by the jury that tends
to prove the existence of the elemental fact in dispute and compare it with the
evidence that tends to disprove that fact.  Johnson, 23 S.W.3d at 7.  We
do not indulge in inferences or confine our view to evidence favoring one
side.  Rather, we look at all the evidence on both sides and then make a
predominantly intuitive judgment.  Id.

Analysis

The statute in effect at the time of the offense, made
it unlawful for a person to
“intentionally, knowingly, or recklessly carr[y] on or about his person a
handgun, illegal knife, or club.”  Act of June 1, 1997, 75th Leg., R.S., ch. 1261
§ 24, 1997 Tex. Gen. Laws 4766,
4776 (amended 2007) (current version at Tex.
Pen. Code Ann. §
46.02(a) (Vernon Supp. 2007)).[2]  This
offense is inapplicable to a person who possesses a handgun “on the person’s
own premises or premises under the person’s control.”  Act of June 1, 1997,
75th Leg., R.S., ch. 1261 § 28, 1997 Tex.
Gen. Laws 4766, 4778 (amended 2007) (current version at Tex. Pen. Code Ann. § 46.15(b)(2) (Vernon Supp. 2007)).

The statute does not define the term “premises,”
but the term does include a “recreational
vehicle” that is being used “as living quarters, regardless of
whether that use is temporary or permanent.”  Act of May 24, 2003, 78th Leg.,
R.S., ch. 421 § 1, 2003 Tex. Gen. Laws
1669 (repealed 2007) (current version at Tex.
Pen. Code Ann. 46.02(a-2) (Vernon Supp. 2007)).  A “recreational
vehicle” constitutes a “motor vehicle primarily designed as temporary living
quarters or a vehicle that contains temporary living quarters and is designed
to be towed by a motor vehicle,” including a “travel trailer, camping trailer,
truck camper, motor home, and horse trailer with living quarters.”  Id.

Johnson testified that he had been living in the
van since being separated from his wife a few months earlier.  He had a
television powered by a car battery for an “entertainment center,” placed a bar
in the van for hanging clothes, covered the windows with towels for privacy,
and stored food in an ice cooler.  The van also contained shelves where Johnson
kept books, magazines, and photographs.  For a bed, Johnson used blankets, pillows,
a foam mat, and a bedroll.  Johnson testified that the van could be towed if
necessary and he considered it to be his home.  He sometimes carried the gun in
the van for “safety” and “some sense of security,” but had been storing it at
his wife’s home and had retrieved it on the day of the offense.  He could not
recall where he had slept on the night before the offense.

Johnson’s father testified that he had purchased
the van as a mode of transportation for Johnson and a place for Johnson to live
and store his property.    Librarians Lou Vonne Johnson and April Serig suspected
that Johnson had been living in the van.  Both DuBois and Shumaker recalled
that Johnson had been living in the van.  Shumaker testified that the van was
an older “Ford Econoline Van” registered to a construction company.  It smelled
like body odor and contained clothing, a sleeping bag, pillows, fishing poles,
and other personal items.  Johnson told Shumaker that he was separated from his
wife and had been living in the van.  Shumaker had no reason to doubt this
story and admitted that the van was Johnson’s home.  However, Shumaker
testified that, after Johnson’s arrest, Johnson stated that he sometimes lived
with his wife.  He added that Johnson’s van is neither primarily designed as
temporary living quarters nor contains temporary living quarters designed to be
towed.  During the booking process, Johnson listed his wife’s address as his
current address.

In light of this evidence, Johnson argues that the
jury was “irrational” by rejecting his defense that he was carrying the gun on
his premises.  He questions “why wouldn’t a van adapted as living quarters also
qualify under the ‘mobile home’ exception.”  The State responds that the van
was designed to be a “work or cargo vehicle,” not as “temporary living
quarters” or “containing temporary living quarters and designed to be towed by
a motor vehicle.”  We agree.

The jury could reasonably conclude that, unlike
the types of recreational vehicles identified in the statute, Johnson’s van is
not specifically designed to serve as “temporary living quarters” or to be
towed.  That it is capable of such does not make it a “recreational vehicle” as
contemplated by the statute.  As the sole judge of the weight
and credibility of witness testimony, the jury was entitled to resolve the
evidence either for or against Johnson.  See Wyatt v. State, 23 S.W.3d 18, 30 (Tex. Crim. App. 2000).  The jury could reasonably reject Johnson’s defense
that he was carrying the gun on his premises and could reasonably conclude,
beyond a reasonable doubt, that Johnson committed the offense of unlawfully
carrying a weapon.  See Curry, 30 S.W.3d at 406. 
The proof of guilt is not so weak nor the conflicting evidence so strong
as to render the jury’s verdict clearly wrong and manifestly unjust.  See
Watson, 204 S.W.3d at 414-15;
see also Johnson, 23 S.W.3d at 11. 
Because the evidence is legally and factually sufficient to support Johnson’s
conviction, we overrule his first point of error.

traveling defense

            Johnson’s second point of error
challenges the court’s refusal to instruct the jury on the defense of traveling.

Standard of Review

“A defendant is entitled to an instruction on [a
defensive issue] if the issue is raised by the evidence, whether that evidence
is strong or weak, unimpeached or contradicted, and regardless of what the
trial court may think about the credibility of the defense.”  Ferrel v. State, 55 S.W.3d 586, 591 (Tex. Crim.
App. 2001); Kelly v.
State, 195 S.W.3d 753, 756 (Tex.
App.—Waco 2006, pet. ref’d).  We review the evidence in the light most favorable to the
defendant to determine whether a defensive issue should have been submitted.  Kelly,
195 S.W.3d at 756; see Ferrel, 55 S.W.3d at 591.

Analysis

A person who is “traveling” cannot be guilty of
unlawfully carrying a weapon.  See Act of June 1, 1997, 75th Leg., R.S.,
ch. 1261 § 28, 1997 Tex. Gen. Laws
4766, 4778 (amended 2007) (current version at Tex.
Pen. Code Ann. § 46.15(b)(3) (Vernon Supp. 2007)).  “[T]here is ‘no hard and fast rule’” for determining “traveler”
status:

…it has been held that one traveling from county
to county within the state is a traveler.  But it has also been held that if
the trip between counties is “so short there is no real journey, then one is not
a traveler.” Cases hold that if a traveler loiters along the way, or
unnecessarily deviates from the course of travel, he loses his status as a
traveler. However, interruption of the journey for legitimate incidental purposes
does not forfeit a traveler’s right to carry a pistol.  Whether one stays
overnight is also a factor to be used in determining if he qualifies as a
traveler.  Yet, an overnight stay is not required to claim the traveling
defense.  Some cases hold that once a traveler arrives at his destination and
secures a room he is no longer a traveler.  Likewise, one who has returned to
his home area after traveling loses his status as a traveler. 

 

Illingworth v. State, 156 S.W.3d 662, 665-66 (Tex. App.—Fort Worth
2005, no pet.) (internal citations omitted).

Johnson testified that he had secured a job in Austin and had traveled from College Station to Austin in his van to interview for the job
and search for an apartment.  On the day of the offense, he had retrieved
several personal items from his wife’s home, placed the items in his van, and
prepared to travel to Austin.  He stopped at the library to check email to determine
whether “there’s any changes, see if I needed to talk to anyone in Austin” or
“tie up any loose ends” in Bryan/College Station.  He had an afternoon appointment
to pick up a pay check in Bryan, in route to Austin.  Johnson believed that he
was “actively engaged in a journey” on the day of the offense.  He had been at the
library for approximately four and a half hours by the time police arrived.

Shumaker and Johnson discussed the van’s
“mechanical ability to travel out of town.”  Johnson expressed doubt that the
van would “make it” and thought that “[h]e would probably end up giving it away
before he moved out.”  Shumaker testified that Johnson did not indicate that he
was going anywhere but Bryan on the day of the offense and did not state that
he planned to travel out of town.  DuBois never heard Johnson state that he was
traveling to Austin that day.  The court declined Johnson’s request for a jury
instruction on the defense of traveling.

In reliance on Johnson v. State, 571 S.W.2d 170 (Tex. Crim. App. 1978), and Campbell v. State, 28 Tex. Ct. App. 44, 11 S.W. 832 (1889), Johnson argues that he was
entitled to a jury instruction on the traveling defense.  In Johnson, the
defendant appealed his conviction for unlawfully carrying a handgun, arguing
that the traveling defense applied because he was carrying the gun while moving
from one residence to another.  See Johnson, 571 S.W.2d at 171-72.  The
Court of Criminal Appeals held that “carrying
a handgun from an old residence to a new residence will constitute a defense to
prosecution under Sec. 46.02,” but the weapon
may not be carried “idly, or for the sake of carrying it, or habitually, or for
some unlawful purpose.”  Id. at 172.

            In Campbell, the defendant was
carrying a pistol from Jennings’s residence, where he had been residing, to his
residence in a different county.  See Campbell, 11 S.W. at
832.    The Court of Appeals found that
 Campbell was entitled to “carry the pistol at Jennings’s house, because he was
upon his own premises within contemplation of the law,” and to “take the pistol
to his permanent home when he left Jennings’s.”  Id.  “[W]hile going
from Jennings’s to his permanent home in another county, a distance of many
miles, he was a person traveling within the meaning of the law.”  Id.

            Unlike Johnson and Campbell,
Johnson was not in the course of traveling at the time he was arrested.  See
Illingworth, 156 S.W.3d at 667 (upholding determination that defendant was “not in the course
of traveling”
when arrested); see also Soderman v. State, 915 S.W.2d 605, 610 (Tex. App.—Houston
[14th Dist.] 1996, pet. ref’d) (assuming that defendant was
traveling previously, he was not “in the course of that travel when he was
apprehended” and was not entitled to an instruction on the traveling defense). 
He had been at the library for several hours by the time police arrived.  He
had not yet begun his journey, but was merely waiting to do so.  Because the issue
was not raised by the evidence, the trial court did not err by refusing to
instruct the jury on the traveling defense.  We overrule Johnson’s second point
of error.

challenge for cause

            In his third point of error, Johnson contends that
the trial court erred by granting the State’s challenge for cause to a member
of the venire panel.

Standard of Review

A trial court’s ruling on a
challenge for cause is reviewed for abuse of discretion.  Russeau v. State, 171 S.W.3d 871, 879 (Tex. Crim.
App. 2005).  “We afford the trial court considerable deference,
because it is in the best position to evaluate a prospective juror’s demeanor
and responses.”  Id.  “This is especially true when this Court is faced
with a vacillating or equivocating venireperson.”  Banda v. State, 890 S.W.2d 42, 54 (Tex. Crim.
App. 1994); see Russeau, 171 S.W.3d at 879; see also King v. State, 29 S.W.3d 556, 568 (Tex. Crim.
App. 2000).  “The trial court is able to consider important factors
such as demeanor and tone of voice that do not come through when reviewing a
cold record.”  Banda, 890 S.W.2d at 54.

Analysis

During voir dire, the State asked whether anyone
“feels like you cannot sit in judgment of another person.”  Juror Thomas responded
that she does not “like to judge people,” “can’t be a part of convicting
somebody,” and “it doesn’t feel right for me.”  She “agree[d] with the law” and
agreed that “you should pay for what you do.”  When the defense asked whether
she could vote guilty if “convinced beyond a reasonable doubt,” Thomas replied:

For me, it’s not that I couldn’t do it.  It’s --
it’s actually more of a religious thing.  I’m with-- I’m a religion that’s not
really widely known anymore.  I’m pagan and I believe in Karma.  And whether I
-- it’s a reasonable doubt that he is guilty or not guilty, I’d feel like the
actions that I put on him -- say, I thought, without a reasonable doubt he was
guilty and I put him behind bars.  I believe in Karma in the three-way that it
would come back to me.  I mean, that’s just with anything that I do.  

 

During a bench conference, Thomas further
expressed doubt about her ability to vote guilty if the evidence proved guilt
beyond a reasonable doubt:

I really couldn’t give you a reasonable answer. 
It’s like the -- the religious side of me wants to say no, because it’s the
religious part; but part of me says, if it would get somebody that did
something wrong off the streets, then I would.  So, I can’t say yes or no…

 

She stated that she could vote guilty “[i]f
everything pointed to where there was not a doubt in my mind that he was
guilty” and where “there’s no doubt whatsoever.”  Thomas later stated that she
thought she could find guilt if proved beyond a reasonable doubt.  The decision
would weigh on her “mind for a bit,” but Thomas did not believe that “it would
be a burden on my conscience.”  Neither did she believe that she would filter
the evidence through her religious beliefs:  

I’ve actually gotten to the point where I don’t
have to filter it, because I was raised in a Christian family.  So this is kind
of my own little beliefs.  But I wouldn’t have to filter.  It wouldn’t -- I’m
not thinking it would be 100 percent clogging my judgment.  I would be able to
leave the religion part out of it as much as I can, sink everything and trying
to leave my beliefs out of it, trying to stay unbiased, either way.  

 

She would try her “hardest” to prevent religion
from interfering with her decision and “[t]here’s a 85, 90 percent chance that
I could.”  Upon further questioning from the trial court, Thomas indicated that
she could apply the reasonable doubt standard instead of “guilt beyond all
possible doubt.”

The State challenged Thomas for cause, expressing
a lack of confidence in her ability to “set aside her religion and follow the
law.”  Over Johnson’s objection, the trial court granted the strike, agreeing
that Thomas “has a bias against the State.”[3]  Johnson
objected to this ruling.  On appeal, he argues that Thomas was improperly struck
because she stated her ability to follow the law and find guilt where the elements
of the charge were proved beyond a reasonable doubt.

However, Thomas gave conflicting answers about her
ability to follow the law.  At one point she indicated that the State should
prove guilt beyond all doubt, but later agreed that she could find guilt
if proven beyond a reasonable doubt.  She expressed doubt as to her
ability to vote guilty even if the evidence proved guilt beyond a reasonable
doubt and assessed only an “85, 90 percent chance” that her religious beliefs
would not interfere with her decision.  Under these circumstances, we defer to
the trial court, as it was in a better position to evaluate Thomas’s ability to
serve on the jury.  See
Russeau, 171 S.W.3d at 880 (potential juror properly
struck after providing “conflicting
answers about her ability to follow the law”); see also Howes v. State, 120 S.W.3d 903, 909 (Tex.
App.—Texarkana 2003, pet. ref’d) (where panelist gave responses that both supported the trial court’s ruling and “cut
against its ruling,” appeals court deferred to the trial court’s decision).  We overrule Johnson’s third point of error.

motion to suppress

Johnson’s fourth point of error challenges the
denial of his motion to suppress on grounds that the gun was seized as the
result of an illegal detention and arrest.[4]

Standard of Review

We apply a bifurcated standard of review to the denial
of a motion to suppress.  See Haas v. State, 172 S.W.3d 42, 49
(Tex. App.—Waco 2005, pet ref’d).  First, we review the denial for abuse of
discretion.  See Oles v.
State, 993
S.W.2d 103, 106 (Tex. Crim. App. 1999).  Second, we conduct a de
novo review of the law as applied to the facts.  See Haas, 172 S.W.3d at 49; see also Carmouche
v. State, 10
S.W.3d 323, 327 (Tex. Crim. App. 2000);  Oles, 993 S.W.2d at 106.  Absent
specific findings, we review the evidence in the “light most favorable” to the
ruling.[5]  Haas, 172 S.W.3d at 49; Carmouche, 10 S.W.3d at 327-328.  The
ruling will be affirmed if “reasonably supported by the record” and correct on any
applicable legal theory.  Romero v. State, 800 S.W.2d 539, 543 (Tex. Crim. App.
1990); Cisneros v. State, 165 S.W.3d 853, 856 (Tex. App.—Texarkana 2005, no pet).

Analysis

“An officer conducts a lawful temporary detention when he has
reasonable suspicion
to believe that an individual is violating the law.”  Ford v. State, 158
S.W.3d 488, 492 (Tex. Crim. App. 2005).  A continued detention is also justified if supported by reasonable
suspicion.  See Haas, 172 S.W.3d at 52.  Reasonable suspicion exists where the officer has “specific
articulable facts that, when combined with rational inferences from those
facts, would lead him to reasonably suspect that a particular person has
engaged or is (or soon will be) engaging in criminal activity.”  Garcia v. State, 43 S.W.3d 527, 530 (Tex. Crim.
App. 2001).  It is determined from the totality of the
circumstances.  Id.

At the suppression hearing, Shumaker testified
that he was dispatched to the library on a “welfare concern.”  He quickly began
to suspect that Johnson was publicly intoxicated.  He observed the container of
medicine bottles and noticed that Johnson was “unsteady on his feet and was
staggering,” had an alcohol smell on his breath, and had red, glassy, bloodshot
eyes.  Johnson stated that he had consumed some wine, used medication, and was
suffering some kind of reaction.  He refused medical attention, seemed nervous,
and kept looking at the van, causing Shumaker to suspect that “something was
possibly in the van.”  He provided differing explanations regarding the
medication, initially naming only a few medications but subsequently claiming
that all the bottles in the container belonged to him.  Johnson refused to
consent to a search of the van “because I have…”  This reaction raised
Shumaker’s suspicions that the van contained “something illegal.”  Shumaker
testified that he was attempting to determine whether Johnson was “intoxicated
by an overdose of the pills.”  He had a hunch that not all the medications
belonged to Johnson, but admitted having no facts to “back it up.”

Shumaker testified that it took approximately
fifteen minutes to dispel his suspicions that Johnson was intoxicated.  Yet,
Johnson was further detained.  Shumaker testified that Johnson had refused to
allow him to inspect the container, but agreed to show the container to
narcotics officers; thus, the detention was continued pending the officers’
arrival.  Johnson was informed that narcotics officers had been contacted.  He
was free to leave while awaiting their arrival.  When Hanks arrived, he asked
for the container, which Johnson retrieved and gave to him.  After finding the
medicine prescribed to Johnson’s wife, Hanks spoke with Johnson’s wife who
confirmed that Johnson was not supposed to have her medication.

Johnson denied consenting to the detention or
knowing that the narcotics office had been contacted.  He neither agreed to
wait for a narcotics officer nor agreed to show the container to a narcotics
officer and was surprised by Hanks’s arrival.  He told the officers on two
occasions that he needed to leave to make an appointment.  He did not feel free
to leave because he was surrounded by patrol cars and officers.

On appeal, Johnson contends that the gun should
have been suppressed because, even assuming that the initial detention was
legal, officers lacked reasonable suspicion to continue the detention after
determining that he was not publicly intoxicated.  Accordingly, he contends
that his arrest was illegal and the gun was illegally seized.

At the time Johnson was detained, the totality of
relevant circumstances included: (1) the report from the library describing
Johnson’s strange behavior; (2) the alcohol smell on Johnson’s breath; (3)
Johnson’s difficulty walking; (4) Johnson’s glassy and bloodshot eyes; (5) Johnson’s
nervous behavior; (6) the container of prescription medicine bottles; (7)
Johnson’s inconsistent attempts to account for the medication; and (8) Johnson’s
statements that he had used medication and was suffering from a reaction.  Shumaker identified
specific, articulable facts which provided reasonable suspicion to believe that
Johnson may have been (1) publicly intoxicated by alcohol, drugs, or both; or
(2) in possession of a dangerous drug, as evidenced by the container of
medicine.    

Although it took a short time to determine that
Johnson was not intoxicated, the record indicates that the officers were still
concerned about the container of medicine bottles.  According to Shumaker, Johnson
agreed to allow narcotics officers to examine the container, agreed to await
their arrival, and knew that they had been contacted.[6] 
Johnson contends that he did not so consent, having told the officers that he
needed to make a four o’clock appointment.  The trial court bore the burden of
resolving these conflicts.  See Wiede v. State, 214 S.W.3d 17, 24-25 (Tex. Crim.
App. 2007) (at a suppression hearing, the trial court is the sole
judge of the credibility of witnesses and the weight to be given their
testimony); see also Garza v. State, 213 S.W.3d 338, 346 (Tex. Crim.
App. 2007) (the court may choose to believe or disbelieve any or all
of a witness’s testimony).  The trial court could have determined that Johnson
agreed to show the container to narcotics officers and that the continued
detention was justified by the need to await their arrival to inspect the
container in order to quickly dispel or confirm suspicions regarding the
medicine bottles.  See Belcher v. State, 244 S.W.3d 531, 541-42 (Tex. App.—Fort Worth 2007, no. pet.) (legitimate law enforcement purpose served during
twenty-seven minute delay in detention while awaiting the arrival of a DWI
enforcement officer).  We cannot say that Johnson was illegally detained.       

Johnson further argues that there was no probable
cause to arrest him because he was in possession of a drug that had been
obtained from a pharmacist.  See Tex. Health & Safety Code Ann. § 483.041 (Vernon Supp. 2007) (“A person commits an offense if the person
possesses a dangerous drug” unless the person obtains the drug from a
pharmacist or a practitioner).  However, Johnson was in possession of a
dangerous drug that was not prescribed to him; he did not obtain the
drug from a pharmacist or practitioner.  The officers had probable cause to
arrest Johnson.  See State
v. Ballard, 987 S.W.2d 889, 892 (Tex. Crim. App. 1999) (“Probable cause for
an arrest exists where, at that moment, facts and circumstances within the
knowledge of the arresting officer, and of which he has reasonably trustworthy
information, would warrant a reasonably prudent person in believing that a
particular person has committed or is committing a crime”).  They were then
authorized to perform a search of the van incident to Johnson’s arrest.  See
State v. Gray, 158 S.W.3d 465, 470 (Tex. Crim. App. 2005)
(officer may conduct search of vehicle incident to lawful arrest).  Accordingly, the trial court properly denied Johnson’s motion to suppress.  We
overrule his fourth point of error.

            Having overruled Johnson’s four points
of error, we affirm the judgment.

 

 

FELIPE REYNA

Justice

Before Chief Justice
Gray,

Justice
Vance, and

Justice
Reyna

(Chief Justice Gray concurs but a separate opinion
will not issue.  He notes, however, that an unconstitutional-as-applied
challenge was not made by Johnson to his possession of a handgun in what was
for all apparent purposes his residence even if he occasionally slept
elsewhere.)

Affirmed

Opinion delivered and
filed May 21, 2008

Do not publish

[CR25]

 

 

 

 









[1]               The jury acquitted Johnson of
possessing a dangerous drug.  





[2]               A similar version of the statute
was enacted during the same legislative session.  See Act of May 31,
1997, 75th Leg., R.S., ch. 1221 § 1, 1997 Tex.
Gen. Laws 4684.  We look to the statute latest in date of enactment.  See
Tex. Gov’t  Code
Ann. § 311.025(a) (Vernon
2005).





[3]               Johnson later objected to the
composition of the jury, complaining that the State essentially received an
extra strike and seeking an additional peremptory strike.  This request was
denied and Johnson complained that he had used all other strikes, forcing him
to accept an objectionable juror.  

 





[4]               Johnson filed three motions to
suppress raising various allegations.  He challenges only the trial court’s refusal
to suppress the gun.

 





[5]               The record only contains an
unsigned draft of the trial court’s findings of fact and conclusions of law.





[6]               Johnson complains
that police cannot use his refusal to consent to search to form reasonable
suspicion.  However, “[n]ervous, evasive behavior is a pertinent factor in
determining reasonable
suspicion.”
 Illinois v. Wardlow, 528 U.S. 119, 124, 120 S. Ct.
673, 676, 145 L. Ed. 2d 570 (2000).  The manner in which Johnson
refused to consent, i.e., his continued looks towards the van and his
statement “because I have…,” raised the officers’ suspicions.