IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-08-00353-CV

 

MCI Sales and Service, Inc., 

                                                                                    Appellant

 v.

 

James Hinton, Individually and as

Representative of the Estate 

of Dolores Hinton, Deceased, et al.,

                                                                                    Appellees

 

 

 



From the 170th District
Court

McLennan County, Texas

Trial Court No. 2003-2308-4

 



order OF RECUSAL



 

            I hereby recuse myself from
further participation in this case.

 

                                                                                    _____________________________

                                                                                    REX
D. DAVIS

                                                                                    Justice

 

                                                                                    Date:
________________________






en
shed, Ashford gave his consent.  He also agreed to accompany the detective to
the police station.  

      At the police station, Ashford
again denied involvement in the murders and claimed he had lied to his father. 
Ashford remained at the police station for approximately one hour for
questioning.  Malcom then proposed that he take a polygraph test “to clear the
matter up.”  He drove Ashford to the polygraph office and stayed with him
throughout the three to three-and-a-half hour examination.  After learning that
he failed the exam, Ashford voluntarily discussed his involvement in the
murders.  Although Malcom did not place him under arrest at that time, in an
“abundance of caution” he read him his rights.  Ashford acknowledged his rights
and made a written statement at 9:00 p.m. in which he confessed to killing
Ogdie and Chance.  Malcom arrested Ashford after he completed the written
statement.

Motion to Suppress

      Prior to trial, Ashford filed a motion to suppress the
written statement arguing that the statement should have been suppressed
because he had invoked his right to counsel.  The trial court denied the
motion.  In his first issue, Ashford argues that the court abused its
discretion in denying this motion.

Standard of Review

A trial court’s denial of a
motion to suppress is reviewed for abuse of discretion.  Oles v. State,
993 S.W.2d 103, 106 (Tex. Crim. App. 1999). There is an abuse of discretion
“when the trial judge’s decision was so clearly wrong as to lie outside that
zone within which reasonable persons might disagree.”  Cantu v. State,
842 S.W.2d 667, 682 (Tex. Crim. App. 1992); Montgomery v. State, 810
S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh’g). 

The trial court’s findings
of fact are given “almost total deference,” and in the absence of explicit
findings, the appellate court assumes the trial court made whatever appropriate
implicit findings that are supported by the record.  Carmouche v. State,
10 S.W.3d 323, 327-28 (Tex. Crim. App. 2000); Guzman v. State, 955
S.W.2d 85, 89-90 (Tex. Crim. App. 1997).  However, the application of the
relevant law to the facts is reviewed de novo.  Carmouche, 10 S.W.3d at
327. Also, when the facts are undisputed and we are presented with a pure
question of law, de novo review is proper.  Oles, 993 S.W.2d at 106. 

Applicable Law

      Custodial interrogation must
cease once a person invokes his right to counsel.  Miranda v. Arizona, 384 U.S. 436, 473, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).  However, a police
officer is not required to cease questioning after a suspect requests counsel
if he is not in custody.  Brossette v. State, 99 S.W.3d 277, 282 (Tex. App.—Texarkana 2003, pet. dism’d).  Further, the Code of Criminal Procedure allows for
the admission of “a statement that does not stem
from custodial interrogation.”  Tex. Code Crim. Proc. Ann. art. 38.22 § 5 (Vernon 2006).  

A person is in custody only
if, under the circumstances, a reasonable person would believe that his freedom
of movement was restrained to the degree associated with a formal arrest.  Stansbury
v. California, 511 U.S. 318, 114 S.Ct. 1526, 1528-30, 128 L.Ed.2d 293,
298-99 (1994).  The subjective intent of law enforcement officials to arrest is
irrelevant unless that intent is somehow communicated or otherwise manifested
to the suspect.  Id.  The custody determination is based entirely
upon objective circumstances.  Dowthitt v. State, 931 S.W.2d 244, 254
(Tex. Crim. App. 1996).  

      The determination of custody must
be made on an ad hoc basis, after considering all of the circumstances.  Id. (citing Shiflet v. State, 732 S.W.2d 622, 629 (Tex. Crim. App.
1985)).  Stationhouse questioning does not, in and of itself, constitute
custody.  Id. (citing California v. Beheler, 463 U.S. 1121, 1124-25, 103 S.Ct. 3517, 3519-20, 77 L.Ed.2d 1275 (1983)).  Likewise, custody
does not occur merely because the suspect submits to and fails a polygraph
test.  Id.  However, the mere fact that an interrogation begins as
noncustodial does not prevent custody from arising later; police conduct during
the encounter may cause a consensual inquiry to escalate into custodial
interrogation.  Id.

      The four general situations which may
constitute custody are:  (1) when the suspect is physically deprived of his
freedom of action in any significant way; (2) when a law enforcement officer
tells the suspect that he cannot leave; (3) when law enforcement officers
create a situation that would lead a reasonable person to believe that his
freedom of movement has been significantly restricted; and (4) when there is
probable cause to arrest and law enforcement officers do not tell the suspect
that he is free to leave.  Shiflet, 732 S.W.2d at 629.  For the first
three situations, the restriction upon movement must amount to the degree
associated with an arrest as opposed to an investigative detention.  Stansbury,
511 U.S. at 320, 114 S.Ct. 1526.  For the fourth situation, the officers’
knowledge of probable cause must be manifested to the suspect.  Id.  However, a manifestation of probable cause such as providing a suspect
with information substantiating probable cause does not automatically establish
custody.  Dowthitt, 931 S.W.2d at 255.  Rather, custody is established
if the manifestation of probable cause, combined with other circumstances,
would lead a reasonable person to believe that he is under restraint to a
degree associated with an arrest.  Id.  

Analysis

      Ashford was not in custody during
the initial interview at his home.  Although Malcom had a warrant for Ashford’s
arrest during the initial interview at the house, he did not arrest Ashford nor
did he communicate his intent to arrest him.  Rather, he chose to seek his
cooperation.  Ashford spoke voluntarily with Malcom, who gave no indication
that Ashford was not free to leave.  Ashford was not in custody when he
requested an attorney, and Malcom was not required to cease questioning at that
time.

      Ashford voluntarily accompanied
Malcom to the police station and to the polygraph office.  Two factors weigh in
favor of custody in this situation:  (1) Malcom’s manifestation of his
knowledge of probable cause by confronting Ashford with the information his
father provided to police, and (2) that Ashford met with detectives for
approximately nine hours.  However, Malcom did not physically restrain Ashford,
tell him he could not leave, or manifest any intent to detain him as a
suspect.  Considering all the circumstances, the record does not show that Malcom
was in custody during the questioning at the police station or during the
polygraph examination.  Regardless, prior to giving the written statement, Malcom
read Ashford his rights.  Even if we were to find that this consensual inquiry
escalated into custodial interrogation, by advising Ashford of his rights, the
requirements of Miranda and article 38.22 were met and the statement was
admissible.  The trial court did not abuse its discretion in denying the motion
to suppress.  We overrule Ashford’s first issue.

Double Jeopardy

The indictment alleged that
Ashford committed capital murder by intentionally killing Kevin Ogdie and Kelly
Chance in count one and by killing one victim in the course of committing or
attempting to commit robbery in counts two and three.  Ashford was convicted on all three counts and, in his third issue,
complains that the three convictions violate his right against the imposition
of multiple punishments under the Fifth Amendment's double jeopardy clause.  He
asks us to vacate the convictions under counts two and three.  The State agrees
that double jeopardy bars three capital murder convictions; however, it argues
that we should vacate the conviction under count one and retain the convictions
under counts two and three.

The test for determining
which conviction is barred by double jeopardy is the “most serious punishment”
test.  Landers v. State, 957 S.W.2d 558, 560 (Tex. Crim. App. 1997).  Generally,
the “most serious punishment” is the longest
sentence imposed, with rules of parole eligibility and good time serving as a
tie-breaker.  Id.  However,
all three of Ashford’s
convictions are for capital murder and each carries the same punishment, parole
eligibility, and good-time credits.  In the absence of any other “tie-breaker,”
we find that two convictions are a more serious punishment than one
conviction.  Accordingly, we will vacate Ashford’s conviction under count one
and retain the convictions under counts two and three.  We sustain issue three.

Jury Instruction

      Ashford requested that the trial
court include the following instruction on count one in the jury charge:  “if
self defense is raised by the evidence, then the State has the burden to
disprove self defense beyond a reasonable doubt.”  The court denied this
request.  In his second issue, Ashford complains of this ruling.  

Due to our disposition on
issue three, we need not address Ashford’s second issue.  However, we would
find that the jury charge complied with the Penal Code and properly placed the
burden on Ashford to
produce evidence raising the defense, placed the burden of persuasion on the
State to disprove the defense, and required the jurors to acquit if they had a
reasonable doubt about the defense.  See Tex. Pen. Code Ann § 2.03 (Vernon 2003).  Accordingly, the
trial court did not err in omitting Ashford’s requested instruction.  We
overrule issue two.

Conclusion

      We reform the trial court’s
judgment to delete the conviction for capital murder under count one of the
indictment.  As reformed, the judgment is affirmed.

 

BILL VANCE

Justice

 




Before
Chief Justice Gray,

Justice Vance, and

Justice Reyna

Reformed
and affirmed

Opinion
delivered and filed August 23, 2006

Do
not publish 

[CRPM]

 









    [1]   Malcom
testified that Ashford never mentioned an attorney.